[L. A. No. 9179.   In Bank.—March 10, 1927.]

## LOS ANGELES CITY SCHOOL DISTRICT, etc., Petitioner, v. ROBERT A. ODELL, as President of the Board of Education, etc., et al., Respondents.

[1] Pleading — Demurrer — Allegations Taken as True. — Upon a general demurrer to a petition for a writ of mandate, the allegations of the petition may be accepted as true.

[2] Id.—Section 1617½, Political Code—Construction — Constitutional Law.—By the amendment of 1919 (Stats. 1919, p. 399), to section 1617½ of the Political Code, the legislature not only made the section apply to boards of trustees of any school district, and boards of trustees of union high schools or joint union high school districts, as well as to city boards of education, but struck from its provisions all reference .to a daily average attendance; and there is, therefore, nothing in the section itself to support the contention that it is unconstitutional as being special legislation and provides for an arbitrary and discriminatory classification of school districts.

[3] Id.—Title of Amending Act—Construction. — The fact that the title to the act of 1919 amending section 1617½ of the Political Code retains the words "a total average daily attendance exceeding fifty-five thousand," which provision is not contained in the body of the act, does not render it unconstitutional.

[4] Id.—Statutory Construction—Constitutional Law. — While the title of an act may be relied upon in ascertaining the intention of the legislature, where the act itself is ambiguous, the title cannot be used for the purpose of restraining or controlling any positive provision of the act.

[5] Id.—Revision of Statutes—Construction. — A revised act must be construed as a new and original piece of legislation, and, if possible, effect must be given to every part thereof.

[6] Id.—Section 1617½, Political Code—Amendment of 1919—Construction.—The act of 1919 amending section 1617½ of the Political Code (Stats. 1919, p. 399), does not violate section 24 of article IV of the constitution by referring to certain subjects apparently not included nor mentioned in its title. This statute was intended to authorize and sanction the sale and leasing of public

1.   See 16 Cal. Jur. 866.
4.   See 23 Cal. Jur. 771; 25 R. C. L. 1032.
5.   See 23 Cal. Jur. 683; 25 R. C. L. 907.
6.   See 23 Cal. Jur. 661.

school property by the enumerated boards, and this purpose is fairly discernible from the title to the act and all the provisions need not have been set forth in the title.

[7] Id.—School Property—Section 1617½, Political Code. — The language of section 1617½ of the Political Code, "upon which no public school is being maintained," with reference to the sale of land of a school district, is broad enough to include a public high school; but the fact that land is under lease to a high school district does not prevent the board of education from entering into a contract to sell the land where the time for delivery of title under the contract is beyond the expiration of the lease.

---

(1) 38 C. J., p. 903, n. 36, 37.  (2) 35 Cyc., p. 818, n. 66, 67; 36 Cyc., p. 1010, n. 50.  (3) 36 Cyc., p. 1134, n. 94, 95.  (4) 36 Cyc., p. 1134, n. 93.  (5) 36 Cyc., p. 1057, n. 61, p. 1128, n. 54, 58.  (6) 36 Cyc., p. 1022, n. 1, p. 1028, n. 24, p. 1029, n. 25, 29, p. 1030, n. 30, p. 1043, n. 98, p. 1066, n. 90.  (7) 35 Cyc., p. 946, n. 31, 34, 36.

APPLICATION for a Writ of Mandate to compel the President and Secretary of the Board of Education of Los Angeles to execute a contract for the sale of certain property. Writ granted.

The facts are stated in the opinion of the court.

Everett W. Mattoon, Edward T. Bishop, County Counsel, J. O. O'Connor, Assistant County Counsel, Hill, Morgan & Bledsoe and Haas & Dunnigan for Petitioner.

Robert A. Odell and Frank P. Doherty for Respondents.

WASTE, C. J.—The petitioner, Los Angeles City School District, prays for the issuance of a writ of mandate to compel the respondents, as president and secretary, respectively, of the Board of Education of the City of Los Angeles, to execute and sign, on behalf of said board, an agreement of sale of the real property hereinafter referred to. [1] The respondents have filed a general demurrer to the petition, and we may therefore accept the averments of the petitioner as true. Petitioner and the Los Angeles City High School District, separate and distinct legal en-

tities, are governed and controlled by the Board of Education of the City of Los Angeles, as created and provided for in the city charter. Petitioner is the owner of real property situated at the northwest corner of Eighth Street and Grand Avenue in the city of Los Angeles, commonly known as the "Grand Avenue School Site." The Board of Education, by unanimous vote, adopted a resolution authorizing the sale of the property, and the highest bid, that of the Capital Company in the sum of $1,575,539.22, was accepted. An agreement of sale was thereupon prepared and executed by the company, and was presented to the Board of Education, which, by apt resolution, authorized and directed the respondents, as president and secretary, to sign and execute the contract on behalf of the Board. The respondents have refused and decline to sign or execute the agreement of sale, assigning as the reason for such refusal that section 1617½ of the Political Code, purporting to authorize the sale of public school property, is unconstitutional as being special legislation, and on the further ground that the proposed sale is illegal and void for the reason that the Los Angeles City High School District is maintaining a public high school on the property.

[2]   In support of their contention that section 1617½ of the Political Code is unconstitutional, respondents assert that the authority given by it to sell public school property is confined to boards of education governing city school and city high school districts having an average daily attendance in excess of fifty-five thousand; and that such classification is arbitrary and discriminatory, and, if given effect, would permit but two school boards, namely, those of the cities of Los Angeles and San Francisco, to sell school property. There is no basis for this contention. As now in force, the section contains no limitation based on average daily attendance. Prior to 1917 boards of school trustees and city boards of education had power to purchase or sell school lands only when directed by a vote of their districts. In that year section 1617½ of the Political Code was enacted. By its terms boards of education or other governing boards in cities and having jurisdiction over both the elementary and high school districts embracing such cities, in which the total number of units of average daily attendance in both such school districts, as

shown by the annual report of the county superintendent of schools to the state superintendent of public instruction for the preceding school year, exceeded fifty-five thousand, were authorized to sell or lease for a term not exceeding ninety-nine years any real property belonging to their respective school districts, or high school districts upon which no public school was being maintained. (Stats. 1917, p. 1645.) At the next session of the legislature the section was amended to read, so far as is pertinent here: "1617½. Boards of education, or other governing boards, in cities and having jurisdiction over both the elementary and high school districts embracing such cities, and boards of trustees of any school district and boards of trustees of union high school or joint union high school districts, are hereby authorized to sell or lease for a term not exceeding ninety-nine years, any real property belonging to their respective school districts, or high school districts upon which no public school is being maintained . . . " (Stats. 1919, p. 399.) By the amendment, the legislature not only made the section apply to boards of trustees of any school district, and boards of trustees of union high school or joint union high school districts, as well as to city boards of education, but struck from its provisions all reference to a daily average attendance. There is, therefore, nothing in the section itself on which respondents can base their objection that it is unconstitutional as being special legislation, and provides for an arbitrary and discriminatory classification of school districts.

[3] However, the title of the act amending the section affords some basis for the contention of the respondents, in that it retains the reference to "a total average daily attendance exceeding fifty-five thousand." We have carefully examined the legislative history of Assembly Bill No. 298, introduced January 20, 1919, purporting "to amend Section one thousand six hundred seventeen and one-half of the Political Code." Other than extending its provisions to "boards of trustees of union high school districts" the bill was in the identical language of section 1617½ as originally enacted. It was twice amended in the assembly and once in the senate. By one of these amendments the requirement of, and all reference to, the "total number of units of average daily attendance" was stricken from the

body of the act, but, apparently through inadvertence, was not eliminated from the title. It is, therefore, quite clear that the legislature intended that the provisions of the amendatory act should extend to and include *all* city school and city high school districts, without regard to the average daily attendance therein. The language in the body of the act being clear and unambiguous, it should not be controlled and restrained by the title thereof. **[4]** The authorities are numerous to the effect that the title of an act may be relied on in ascertaining the intention of the legislature, where the act itself is ambiguous; but the title "cannot be used for the purpose of restraining or controlling any positive provision of the act." (*Flynn* v. *Abbott,* 16 Cal. 359, 366; *Barnes* v. *Jones,* 51 Cal. 303, 306; *In the Matter of the Boston M. & M. Co.,* 51 Cal. 624, 626.) There is no ambiguity in the amendatory act of 1919, and its title may not, therefore, be employed to control the plain provisions thereof. **[5]** It is also settled that a revised act must be construed as a new and original piece of legislation and, if possible, effect must be given to every part thereof. (*Donlon* v. *Jewett,* 88 Cal. 530 [26 Pac. 370].) It follows that the "arbitrary classification" complained of by the respondents does not in fact exist, and cannot, therefore, form the basis of a constitutional attack on the statute.

**[6]** Nor do we think it can be successfully maintained that the amendatory act of 1919 violates section 24 of article IV of the constitution by referring to certain subjects apparently not included nor mentioned in its title. It has been held that numerous provisions having one general object fairly indicated by the title to the act may be united. (*Ex parte Liddell,* 93 Cal. 633, 636 [29 Pac. 251]; *Estate of Wellings,* 192 Cal. 506, 519 [221 Pac. 628]; *McClure* v. *Riley,* 198 Cal. 23, 26 [243 Pac. 429].) The statute in question was intended to authorize and sanction the sale and leasing of public school property by the enumerated boards, and this purpose is fairly discernible from the title to the act and, in our opinion, all of the provisions need not have been set forth in the title. It is not necessary that the title of an act should embrace an abstract of its contents. (*Abeel* v. *Clark,* 84 Cal. 226 [24 Pac. 383].) Moreover, it has been held that an act entitled an act to amend a particular section of one of the codes sufficiently

200 Cal.—41

states the subject of the act. (*People* v. *Oates,* 142 Cal. 12, 14 [75 Pac. 337]; *Estate of Elliott,* 165 Cal. 339, 345 [132 Pac. 439].) The almost universal custom of the legislature in making amendments to the codes has been to put into the title of the amendatory act, after the number of the section amended and the name of the code, additional words expressing the subject of the act; and it is well settled that such amendatory act complies with the constitutional requirement. (23 Cal. Jur., p. 661, sec. 54.) That portion of the title of the amendatory act of 1919 which reads, "An act to amend section one thousand six hundred seventeen and one-half of the Political Code," adequately expresses the intention of the legislature, which was to supersede the previous legislation upon the subject. It cannot be said that the provisions of the act are in excess of the title. From the foregoing it follows that section 1617½ of the Political Code, as amended in 1919, is not subject to any of the constitutional objections urged.

[7] The further objection of the respondents to authenticating the agreement of sale is based on the contention that, at the time its execution was directed by the Board of Education, a public school was being maintained on the property. The fact is that although no elementary school was being conducted on the Grand Avenue school site by the petitioner, it had been occupied by the Los Angeles City High School District for more than three years for high school purposes, under an annual rental agreement with petitioner, and, at the time of the negotiations between petitioner and the Capital Company, a public high school was being maintained on the property. The section (1617½, *supra*) authorizes the sale of property belonging to school districts "upon which no public school is being maintained." It is contended by respondents that the maintenance of *any* public school on the real property sought to be transferred is sufficient to preclude a sale thereof under the code section, and that, inasmuch as the Los Angeles City High School District is maintaining a public school on the property under the lease from the petitioner, the contemplated sale is illegal. In reply to this contention, petitioner urges that it has abandoned the property as a school site, and is not now using it for such purpose; and, furthermore, that the provisions of

section 1617½ preclude a sale of public school property *only* when the district which *owns* the same is maintaining a public school thereon.

The language "upon which no public school is being maintained" is broad enough to include a public high school. (Const., art. IX, sec. 6; Pol. Code, secs. 1663, 1720; *Chico High School Board* v. *Board of Supervisors,* 118 Cal. 115 [50 Pac. 275].) The decision in *Richey* v. *Corralitos Union School Dist.,* 67 Cal. App. 708 [228 Pac. 348], lends support to the contention of the petitioner that it has abandoned the school site for school purposes, and as the occupancy for high school purposes was by another school district, it cannot be said that the property is being used for school purposes within the intent of section 1617½, *supra,* but we deem it unnecessary to pursue that subject further, for the admitted fact is that the lease of the property by petitioner to the Los Angeles City High School District expired and terminated prior to the date contemplated in the agreement of sale on which title to and possession of the property were to be delivered to the purchaser. At the time contemplated for such delivery of title and possession the school site was not used or occupied by either the Los Angeles City School District or the Los Angeles City High School District for any school purpose whatever. The respondents contend that notwithstanding the deferred date for the delivery of title and possession, the entire equitable title to the property would have vested in the purchasers upon the execution and delivery of the agreement of sale, and that the Los Angeles City School District would thereafter possess nothing more than the legal title to the property. That is no doubt true. (*Keese* v. *Beardsley,* 190 Cal. 465, 473 [26 A. L. R. 1538, 213 Pac. 500]; *Orange Cove Water Co.* v. *Sampson,* 78 Cal. App. 334 [248 Pac. 526].) But no authorities have been cited to us which would tend to support the theory of the respondents that the School District may not enter into negotiations for the sale of the property as was done in the present case, the delivery of title and possession to take place at some deferred date. It is not contended here that the proceedings looking to the sale of the Grand Avenue school site were in any way irregular or that the price agreed to be paid by the purchasers of the property was in any way in-

adequate, or that any colorable circumstance attached to the sale of the property.

We are, therefore, of the view that no sufficient reason has been shown by the respondents why they should not execute the agreement of sale as directed and authorized by the resolution of the Board of Education acting for the Los Angeles City School District, the owner of the property.

Let a writ of mandate issue directing the respondents to execute and deliver the agreement of sale as prayed for.

Richards, J., Seawell, J., Shenk, J., Curtis, J., Langdon, J., and Preston J., concurred.