[Crim. No. 14527. In Bank. Sept. 25, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD RANDOLPH NICHOLS, Defendant and Appellant.

## COUNSEL

Richard Randolph Nichols, in pro. per., Robert C. Anderson, under appointment by the Supreme Court, and Gary M. Merritt, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci and John P. Oakes, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Richard Randolph Nichols was charged by indictment with two counts of·murder (Pen. Code, § 187), one count of burglary (Pen. Code, § 459), and one count of arson of a dwelling house (Pen. Code, § 447a). There being no evidence of premeditation, the People sought to establish that the offense was murder in the first degree on the theory that the deaths occurred during the perpetration of arson (Pen. Code, § 189). A jury found defendant guilty of murder in the first degree on both counts, and not guilty of burglary and arson. Sentenced to concurrent terms of life imprisonment, defendant appeals from the judgment of conviction.

Audrey Nichols, the defendant's wife, had separated from him and lived in San Francisco with Mr. and Mrs. Hutchins and the Hutchins' two children, Tracey and Kimberly, aged two and five respectively.

In the early evening of February 8, 1968, defendant twice telephoned the Hutchins' home and asked to speak to his wife. On both occasions at the request of Mrs. Nichols, Hutchins told defendant that she was not there. Shortly before 8 p.m., Hutchins left his home, and Mrs. Nichols, two of her friends, Dorothy Harris and Marvin Bibbs, and the two children remained

in the house. Mrs. Nichols' car was in the garage beneath the living quarters of the house. Bibbs' car was parked in the driveway.

About 8 p.m. there was a persistent ringing of the doorbell at the Hutchins' home. The two girls looked through the living room window and one or both of them told the adults that defendant was at the door. No one answered the bell. Shortly thereafter the sound of breaking glass was heard and about 10 minutes later there was the smell of smoke. Several of the adults went to investigate and discovered that one corner of the garage was on fire. Mrs. Nichols noticed the hood of her car raised up. Bibbs, after locating the children, proceeded to bring them downstairs, and as he did so the lights failed. The intense heat and dense smoke forced the group back up the stairs. As Bibbs was breaking open a bedroom window, he lost track of the children in the smoke and dark. He stumbled about the room in an effort to find them and then, feeling himself about to be overcome by smoke, he jumped out of the window. The two children who remained in the home died from smoke inhalation.

The uncontradicted testimony of an expert from the Bureau of Fire Investigation of the San Francisco Fire Department established that the fire started in the engine compartment of Mrs. Nichols' car and then, fed by gasoline from the carburetor, quickly spread to the garage and house. The evidence clearly proved that the fire in the car was intentionally set.

Police investigators questioned defendant the following day and on a later occasion. Each time defendant denied knowledge as to how the fire was started. Several days thereafter the police asked him to come to police headquarters for further questioning. After having been informed of his rights, defendant told the officers that he went to the Hutchins' home to ask his wife if he could use her car that night. He rang the doorbell, but no one answered. He looked inside the car in the driveway and saw that it was registered to a man he did not know. Defendant then noticed his wife's car in the garage. After breaking a glass window in the garage door, he reached inside and opened the door. When he discovered the engine of the car was cold, he concluded that his wife was in the house and had been there for some period of time. Thinking she was both avoiding him and seeing another man, he became angry and decided to frighten her. He wadded some newspaper he found on the floor of the garage around the carburetor and ignited it. He then heard noises in the house, became frightened and ran away. He stated that he never intended to harm anyone.

At trial defendant testified that the statement was false. He claimed he invented the story to protect his wife from further involvement because he thought her negligence might have been the cause of the children's deaths.

## Defendant's Statement

Defendant contends that the statement should not have been admitted into evidence because he was not informed of his right to the presence of counsel *at that particular interrogation.* The record negatives this claim. A tape made of his statement contains the following warning: "[Y]ou have the right to remain silent; (2) anything you say can and will be used against you in a court of law; (3) you have the right to talk to a lawyer and have him present with you *while you are being questioned;* (4) if you cannot afford to hire a lawyer, one will be appointed to represent you *before any questioning* if you wish one." (Italics added.) Moreover, since defendant went to police headquarters specifically to undergo further questioning, it is obvious that the warning had to apply to the interrogation conducted on that particular day.

The trial court instructed the jury that "[t]he guilt of a defendant may not be established alone by any confession or admission made by him outside of this trial. Before any person may be convicted of a criminal offense there must be proof independent of any such statement by a defendant that the crime in question was committed. . . . Now, what we are talking about here is arson. Before you can consider any confession or admission of the defendant, if such there be, you must first conclude that the evidence discloses that arson was committed by somebody. . . . [B]efore you can consider the confession or admission you must conclude that arson was committed, and that gets down primarily to the testimony of the fire expert. If you believe his testimony, then the corpus delicti of arson is established, and you may consider evidence for whatever you deem it to be worth of any alleged confession or admission."

Defendant contends that these instructions were inadequate because they did not also require that the corpus delicti of murder and burglary be established before his statement could be considered on those charges. ■ But defendant was acquitted of burglary, and thus there was no prejudice in omitting reference to that charge. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) ■ As will be shown *infra,* the first degree murder convictions could only be supported by the court's felony-murder instruction on the burning of the car. Since the court adequately instructed on the corpus delicti of that crime,[1] the instructions properly delineated the only use which the jury could have made of defendant's statement in reaching its verdicts.

---

[1]Although the court did not specifically instruct on the corpus delicti of the crime of wilfully and maliciously burning another's automobile, it did tell the jury that if they believed the arson investigator's testimony, the corpus delicti was established. The arson investigator's uncontradicted testimony established beyond any doubt that a fire occurred and that it had an incendiary origin. Petitioner does not seriously contend otherwise.

### Declaration of the Children

On redirect examination Mrs. Nichols testified that one or both of the girls had said it was defendant who rang the doorbell so persistently shortly before the discovery of the fire. Defendant objected to the admission of these declarations on the ground that they were inadmissible hearsay, citing sections 1250, subdivision (b), and 1252 of the Evidence Code.[2]

His reliance on these sections is misplaced. ■ During cross-examination, the defense impugned Mrs. Nichols' motives for accusing her husband of setting the fire, insinuating motives for fabrication. On redirect the prosecution could properly offer evidence of the reasonable basis for her testimony to rebut the inference of bias raised by the defense on cross-examination. (*People* v. *Perez* (1954) 128 Cal.App.2d 750, 757 [276 P.2d 72]; Witkin, Cal. Evidence (2d ed. 1966) § 1277, p. 1181, and authorities cited therein; see *People* v. *La Macchia* (1953) 41 Cal.2d 738, 749 [264 P.2d 15].) The children's declarations were introduced for that purpose rather than to prove the truth of the matter stated and did not constitute hearsay. (Evid. Code, § 1200.) The court properly instructed the jury concerning the limited purpose for which they were admitted ■ Moreover, even if it was error to admit those statements, defendant's own properly admitted confession that he had set fire to his wife's car would make it impossible to hold the error prejudicial as it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the claimed error. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

### Instructions

The trial court instructed the jury that defendant committed arson if he wilfully and maliciously set fire to either the house or the car. They were told "the unlawful killing of a human being, whether intentional, unintentional or accidental, which is committed in the perpetration of arson, is murder of the first degree." "[I]f that fire killed somebody," the court advised,

---

[2]Section 1250. "(a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when:
(1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or
(2) The evidence is offered to prove or explain acts or conduct of the declarant.
(b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed."
Section 1252. "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness."

"whether it is arson of the house or of the automobile . . . it's murder of the first degree."

From the evidence presented the jury could have found defendant guilty of intentionally setting fire to the house by using the car as a torch. But since he was acquitted of arson to the house, the only reasonable interpretation of the murder verdicts under the instructions given is that they were based upon the jury's finding that defendant intentionally set fire to his wife's car. The fire in the house caused the children's deaths, and the arson investigator's uncontradicted testimony established that the fire in the car ignited the house. Defendant contends, however, that the above instructions failed to advise the jury that to hold him responsible for murder they had to find the deaths were proximately caused by the fire and were not the result of the alleged intervening negligence of the adults in failing to get the children out of the house safely. There is no merit in this contention. ■ The deaths were the direct result of the fire. The fact that a third person might have, but did not, rescue the victims cannot lessen defendant's responsibility for the consequences of his acts.

Defendant's final contention concerning the quoted instructions is that the court erred in instructing the jury that a killing which results from the burning of a motor vehicle is murder of the first degree. He contends that burning a motor vehicle in violation of Penal Code section 449a[3] is not arson within the meaning of section 189.[4]

■ The word "arson" does not appear in section 449a. Although the statute is found in the Penal Code chapter entitled "Arson," that chapter heading is not part of the statute and does not "in any manner affect the scope, meaning or intent of the provisions" of that section. (Pen. Code, § 10004.) ■ Of possibly greater significance is the fact that the act which added section 449a to the Penal Code was titled, "An act to add new sections to the Penal Code . . . all relating to the crime of arson." (Stats. 1929, ch. 25, p. 46.) But while that title may be considered in resolving am-

---

[3]"Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any barrack, cock, crib, rick or stack of hay, corn, wheat, oats, barley or other grain or vegetable product of any kind; or any field of standing hay or grain of any kind; or any pile of coal, wood or other fuel; or any pile of planks, boards, posts, rails or other lumber; or any streetcar, railway car, ship, boat or other watercraft, automobile or other motor vehicle; or any other personal property not herein specifically named except a trailer coach, as defined in Section 635 of the Vehicle Code; (such property being of the value of twenty-five dollars ($25) and the property of another person) shall upon conviction thereof, be sentenced to the penitentiary for not less than one nor more than three years."

Hereinafter, all section references are to the Penal Code, unless otherwise stated.

[4]In pertinent part section 189 provides: "All murder . . . which is committed in the perpetration of . . . arson . . . is murder of the first degree. . . ."

biguities about the meaning of a word or clause, it may not be used to control or enlarge positive provisions in the body of the statute. (*In re Bandmann* (1958) 51 Cal.2d 388, 392 [333 P.2d 339]; *Heron* v. *Riley* (1930) 209 Cal. 507, 510-511 [289 P. 160]; *Los Angeles City School Dist.* v. *Odell* (1927) 200 Cal. 637, 641 [254 P. 570]; *Robins* v. *County of Los Angeles* (1966) 248 Cal.App.2d 1, 8 [56 Cal.Rptr. 853].)

At common law only the wilful and malicious burning of another's dwelling house or outbuildings that were a parcel thereof constituted the offense of arson. (*In re Bramble* (1947) 31 Cal.2d 43, 48 [187 P.2d 411]; Curtis, The Law of Arson (1936) pp. 1-2, 14-15.) In 1850 and 1856 the Legislature adopted a broader definition of arson and included the burning of other buildings and standing crops. It also provided that deaths occurring in consequence of arson should be deemed murder. (Stats. 1850, ch. 99, § 56, pp. 234-235; Stats. 1856, ch. CX, § 5, p. 132; ch. CXXXIX, § 2, p. 219.) However, with the adoption of the Penal Code in 1872, the Legislature retreated from this expanded definition and restricted the crime to the burning of buildings capable of affording shelter to human beings. (1872, Pen. Code, §§ 447, 448; Code Commissioners' Note, § 447; Bolton, *Arson in California: Part II* (1962) 35 So.Cal.L.Rev. 375, 379.) "The Code confines the term 'arson' to the offense of setting on fire buildings [as defined by § 448]. Other criminal acts of burning are not properly classified under the title of 'Arson,' but under the title of 'Malicious mischief. . . .' " (Code Commissioners' Note, § 447.) Thus the burning of stacks of grain, formerly included within the definition of arson, but not deemed by the Legislature a special danger to human life, was made malicious mischief and placed under that title. (1872, Pen. Code, § 600; Code Commissioners' Note, § 447.) Only a killing committed in the perpetration of arson as defined by section 447 of the 1872 Penal Code invoked the first degree felony-murder rule of section 189. (See 1872 Pen. Code, § 189; Code Commissioners' Note, 1872 Pen. Code, § 455.)

In 1929 the Legislature completely revised the arson chapter of the Penal Code. It repealed section 447 et seq. and enacted, apparently without examination of the prior legislative history of the crime of arson, the then-called Model Arson Law recommended by the National Board of Fire Underwriters. (Stats. 1929, ch. 25, pp. 46-47; Bolton, *Arson in California: Part II* (1962) 35 So.Cal.L.Rev. 375, 380.) Section 447a defined arson as the wilful and malicious burning of a dwelling house or such outbuildings as are a parcel thereof[5]; section 448a made it a felony to burn buildings which

---

[5]"Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself or of another, shall be guilty

are neither dwelling houses nor parcels thereof[6]; and section 449a made it a felony to burn the personal property of another valued at $25 or more.[7]

The first case to consider the 1929 revision was *In re Bramble* (1947) 31 Cal.2d 43 [187 P.2d 411]. In that case petitioner was indicted for four counts of arson each committed by setting fire to a named store building. He pleaded guilty, and the trial court entered judgment on four convictions of *arson* as charged. Petitioner contended that the judgment was void on the ground that it was based on convictions of crimes he did not commit—that is, he did not set fire to dwelling houses or buildings that were parcels thereof. In its review of the legislative history of section 448a, the *Bramble* court correctly noted that prior to 1929 the wilful and malicious burning of buildings other than dwelling houses also constituted the offense of arson. Thus the court stated: "[T]here are ample historical and legal bases for designating the acts enumerated in section 448a as 'arson.' " (31 Cal.2d at p. 50.) The court stated its understanding of the meaning of the amendment: "The real purpose of differentiating the acts listed in section 448a from those included in section 447a is apparently not to change the nomenclature but to provide a convenient method of pleading and identifying the two classes of acts which are deemed to merit different punishments." (31 Cal.2d at p. 50.)[8]

In *People* v. *Chavez* (1958) 50 Cal.2d 778 [329 P.2d 907], the court applied *Bramble* and held a violation of section 448a "arson" within the meaning of the first degree felony-murder rule of section 189. After setting forth the above-quoted language of *Bramble,* the court declared "there is no sound basis for concluding that the word ['arson'] as used in [section 189] is not intended to apply to the offense dealt with in section 448a." (50 Cal.2d at p.

---

of arson, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years." (Stats. 1929, ch. 25, § 1, p. 46.)

Trailer coaches, as defined by section 635 of the Vehicle Code, were added to the property enumerated in section 447a by Statutes 1959, chapter 1462, section 1, pages 3756-3757.

[6]"Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any barn, stable, garage or other building, whether the property of himself or of another, not a parcel of a dwelling house; or any shop, storehouse, warehouse, factory, mill or other building, whether the property of himself or of another; or any church, meetinghouse, courthouse, workhouse, school, jail or other public building or any public bridge; shall upon conviction thereof, be sentenced to the penitentiary for not less than one nor more than 10 years." (Stats. 1929, ch. 25, § 2, p. 46.)

[7]For present text of section 449a, see footnote 3, *supra.*

Prior to 1959 trailer coaches, as defined by section 635 of the Vehicle Code, were included in section 449a under the phrase "any other personal property not specifically named." In that year the Legislature excepted trailer coaches from 449a and added them to 447a. (Stats. 1959, ch. 1462, §§ 1, 2, pp. 3756-3757.)

[8]Under the 1929 amendments the penalty for violating section 447a was imprisonment from 2 to 20 years; for section 448a, from 1 to 10 years. (Stats. 1929, ch. 25, §§ 1, 2, p. 46.) The Legislature later increased the penalty for violating section 448a to equal that of section 447a. (Stats. First Ex. Sess. 1966, ch. 58, § 1, p. 442.)

788.) The court went on to say that "the 1929 amendments contained nothing to indicate that the offense described by that section [448a] should no longer be regarded as arson." (50 Cal.2d at p. 788.) In thus holding the term "arson" applicable to violations of section 448a, *Bramble* and *Chavez* imply that the 1929 amendments did not significantly change the substantive crime of arson.

However, the 1929 amendments did make an important change possibly relevant in determining the Legislature's intent with respect to section 449a. Until then vessels and boats were defined as buildings capable of sheltering human beings (1872, Pen. Code, § 448). Anyone who wilfully and maliciously burned a vessel or boat committed arson (1872, Pen. Code, § 447), and was guilty of first degree murder if a death resulted. (1872, Pen. Code, § 189.) But the 1929 amendments placed vessels and boats in section 449a, along with stacks of grain and vegetables, piles of planks, boards, posts, rails, and other lumber, piles of coal, wood, or other fuel, as well as with street cars, railway cars, and motor vehicles, and any other personal property belonging to another and worth at least $25.

Since prior to 1929 the burning of vessels and boats was definitely arson, it might be argued that the placement of such burning in section 449a indicated the Legislature's belief that the burning of the other personalty enumerated in that section was equally dangerous to human life. However, the comparatively lenient punishment given for violations of that section (one to three years imprisonment) is persuasive evidence that the Legislature considered violations of that section less dangerous to life than burnings of buildings prohibited by sections 447a and 448a and made punishable by from 2 to 20 years imprisonment. Moreover, it is worth noting that in 1959 the Legislature removed trailer coaches from section 449a and placed them in section 447a. (Stats. 1959, ch. 1462, §§ 1, 2, pp. 3756-3757.) This enactment, expressly making the burning of trailer coaches arson, implies that the burning of motor vehicles is not arson. (*Expressio unius es exclusio alterius;* see *Kiely Corp.* v. *Gibson* (1964) 231 Cal.App.2d 39, 46 [41 Cal.Rptr. 559]; *Capistrano Union High School Dist.* v. *Capistrano Beach Acreage Co.* (1961) 188 Cal.App.2d 612, 617 [10 Cal.Rptr. 750, 92 A.L.R.2d 349].)

The prohibitions of section 449a against burning stacks of grain and vegetables and piles of wood and boards overlaps the prohibition of acts made criminal by section 600 (as amended) of the 1872 Penal Code.[9] Those acts

---

[9]"Every person who willfully and maliciously burns any bridge exceeding in value fifty dollars ($50), or any structure, snowshed, vessel, or boat, not the subject of arson, or any tent, or any stack of hay or grain or straw of any kind, or any pile of baled hay or straw, or any pile of potatoes, or beans, or vegetables, or produce, or fruit of any kind, whether sacked, boxed, crated, or not, or any fence, or any railroad car, lumber, cordwood, railroad ties, telegraph or telephone poles, or shakes, or any

were specifically deemed "malicious mischief" rather than "arson" because they did "not involv[e] special danger to persons." (Code Commissioners' Note, 1872 Pen. Code, § 447.) Thus, even if it were reasonable to believe the Legislature intended the burning of a motor vehicle, vessel, or other conveyance of human beings to be "arson," it is unreasonable to conclude the Legislature intended the death penalty to apply to accidental killings committed in the perpetration of burning a stack of hay, wheat, or tomatoes, or a pile of boards or lumber.[10] ■ We conclude therefore that the Legislature did not intend the word "arson" as used in first degree felony-murder provisions of section 189 to apply to the burning of those items enumerated in section 449a. Even though this conclusion is not free from doubt, it is no more doubtful than the contrary conclusion urged by the Attorney General. (See 1957 Cal. Law Revision Com. Rep., p. 20.) Accordingly, it must be adopted pursuant to the rule that all reasonable doubts as to the proper interpretation and construction of a criminal statute must be resolved in favor of the defendant. (*People* v. *Curtis* (1969) 70 Cal.2d 347, 352, fn. 2 [74 Cal. Rptr. 713, 450 P.2d 33]; *Walsh* v. *Department of Alcoholic Beverage Control* (1963) 59 Cal.2d 757, 764 [31 Cal.Rptr. 297, 382 P.2d 337]; *People* v. *Smith* (1955) 44 Cal.2d 77, 79 [279 P.2d 33]; *People* v. *Valentine* (1946) 28 Cal.2d 121, 143 [169 P.2d 1]; *People* v. *Ralph* (1944) 24 Cal.2d 575, 581 [150 P.2d 401].)

■ The trial court's erroneous instruction applying the first degree felony-murder rule to the burning of the car, however, does not require reversal. There was no instruction that would support either a second degree verdict or a first degree verdict on a theory other than murder committed in

tuleland or peatground of the value of twenty-five dollars ($25) or over, not the property of such person is punishable by imprisonment in the state prison for not less than 1 year, nor more than 10 years."

It is not argued nor does it seem reasonable that the mere renumbering of section 600 to section 449b manifests an intention that the offense, for 94 years considered malicious mischief, now constitutes arson, and as such, possibly invokes the death penalty. (*Dunlop* v. *Tremayne* (1965) 62 Cal.2d 427, 429, fn. 2 [42 Cal.Rptr. 438, 398 P.2d 774, 17 A.L.R.3d 368].)

[10]For purposes of determining whether the Legislature intended the burning of a motor vehicle to be arson within the meaning of the first degree felony-murder rule of section 189, we cannot sever that specific act from the other acts prohibited by the statute. "[A] statute must be read and considered as a whole, in order that the true legislative intention may be determined." (*People* v. *Moroney* (1944) 24 Cal.2d 638, 642 [150 P.2d 888]; accord, *In re Bandmann, supra,* 51 Cal.2d 388, 393.) The People's argument that we should be governed by the title of the act adding section 449a to the Penal Code, "An act to add new sections . . . all relating to the crime of arson," (Stats. 1929, ch. 25, p. 46) itself acknowledges the propriety of looking to the entire statute for guidance as to the Legislature's intent. There is certainly no evidence that the Legislature wanted only some burnings proscribed by the statute to be considered arson; in fact, the uniform penalty given all violations of the statute, regardless of the type of property burned, indicates that the statute should be considered as a unit.

the perpetration of a felony. Consequently, as already noted, the two first degree murder verdicts could only represent the jury's determination that defendant wilfully and maliciously set fire to his wife's car and that the fire killed the two children. ▇ "A homicide that is a direct causal result of the commission of a felony inherently dangerous to human life (other than the six felonies enumerated in Pen. Code, § 189) constitutes at least second degree murder." (*People* v. *Ford* (1964) 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892].) ▇ "Only such felonies as are in themselves 'inherently dangerous to human life' can support the application of the felony-murder rule." (*People* v. *Phillips* (1966) 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353].) In making that assessment the courts "look to the elements of the felony in the abstract, not the particular 'facts' of the case." (*People* v. *Williams* (1965) 63 Cal.2d 452, 458, fn. 5 [47 Cal.Rptr. 7, 406 P.2d 647]; *People* v. *Phillips, supra,* 64 Cal.2d 574, 582.) ▇ Certainly the burning of a motor vehicle, which usually contains gasoline and which is usually found in close proximity to people, is inherently dangerous to human life. We therefore conclude that the wilful and malicious burning of a motor vehicle calls into play the second degree felony-murder rule. ▇ An instruction in these terms would not have changed in any way the factual determination to be made by the jury. It simply would have put into effect a different legal consequence. The effect of the error can be cured by modifying the judgment to second degree murder. (Pen. Code, § 1181, subd. 6; cf. § 1260.) The contention made in defendant's *pro se* brief that such modification would violate his Fourteenth Amendment rights is without merit. (*People* v. *Cowan* (1941) 44 Cal.App.2d 155, 162 [112 P.2d 62].)

▇ Defendant's final contentions concern the trial court's failure to give further instructions on the intent necessary to find him guilty of murder under the felony-murder rule. Defendant correctly argues that to establish murder under that rule, the People must prove that he specifically intended to set fire to either the house or car. (*People* v. *Anderson* (1965) 63 Cal.2d 351, 358 [46 Cal.Rptr. 763, 406 P.2d 43]; *People* v. *Sears* (1965) 62 Cal.2d 737, 744-745 [44 Cal.Rptr. 330, 401 P.2d 938].)

Although the instruction given did not include the words "specifically intend," it nonetheless unambiguously informed the jury that to find the defendant guilty of murder it must find that he set the fire intentionally rather than inadvertently, accidentally, or recklessly.[11]

---

[11]The full instructions provided: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which is committed in the perpetration of arson, the commission of which crime itself must be proved beyond a reasonable doubt, is murder of the first degree.

"Now I have to stop here, because I want to point out a certain matter to you.

"I have defined two arsons for you. The setting fire to or burning of a dwelling

The court repeatedly emphasized that before the defendant could be found guilty of arson he must be found to have "wilfully and maliciously" set the fire. Defendant admitted in his statement that he had purposely set fire to his wife's car in order to frighten her. The arson investigator's uncontradicted testimony proved the incendiary origin of the fire. In light of this record, which contains no evidence from which it could be found that the fire was accidental or the result of 'reckless conduct, defendant's suggestion that the jury did not understand that it must find that he specifically intended to set the fire before he could be found guilty of murder is unsupportable.

 Felony murder predicated upon the commission of arson or the burning of a motor vehicle requires proof only of intent to set the fire that resulted in the victim's death. In this respect it is distinguishable from the situation considered by the court in *People* v. *Sears, supra,* 62 Cal.2d 737, relied on by defendant. There the underlying felony was mayhem.

We held in *Sears* that although intent to maim to sustain a conviction for mayhem itself might sometimes be presumed from the act or types of injuries inflicted, we would not permit reliance on such a presumption where it was sought to predicate a conviction for murder upon the commission of mayhem. Because the malice necessary for murder is itself presumed in felony murder from the intent to commit the felony, we held that where it is sought to predicate felony murder on mayhem, there must be evidence from which

---

house is arson. The setting fire to or burning of a motor vehicle belonging to another of the value of $25.00 or more is arson.

"I have pointed out that the unlawful killing of a human being, whether intentional, unintentional or accidental, which is committed in the perpetration of arson, is murder of the first degree. The commission of the arson must be proved beyond a reasonable doubt. But a killing that results from arson of a dwelling house is murder of the first degree whether the killing is accidental or unintentional or intentional. And the killing which results from the arson of a motor vehicle is murder of the first degree. So either one. However, in this case—so that applies to Counts I and 2, which charge the murder of the two children. Count 4, which charges arson, however, charges arson to the dwelling house.

"Now, you heard the definition of arson being the wilful and unlawful—wilful and malicious setting fire to a dwelling house or an automobile.

"Now, if a person wilfully and maliciously sets fire to an automobile, knowing that it's going to immediately set fire to a house, then he would be guilty of arson in relation to the automobile and the house. But if a person wilfully and maliciously sets fire to an automobile with nothing in his mind relating to that setting fire of the house and not anticipating that it would, then that person would be guilty only of arson of the automobile.

"Now, if that fire killed somebody, whether it was arson of the house or of the automobile, is of no moment; it's murder of the first degree. But if he is charged— if a person is charged with arson of a building, it becomes important whether he set— wilfully and maliciously set fire to the auto knowing full well it was going to set fire to the house, or whether he set fire to the auto not knowing full well that it would set fire to the house, in which event he might or might not be guilty of arson of the house."

it can be found that the battery was not simply an indiscriminate attack but resulted from the defendant's specific intent to maim the victim of the battery.

It can be readily appreciated, therefore, that an instruction on felony murder predicated on mayhem must be more detailed than one based on arson. The jury must find not only that the defendant intended a battery, but that he intended to cause a particular result, the maiming of the victim, whereas in felony murder based on arson the jury need find only that the defendant intended to set the fire. The instructions given here properly instructed the jury as to the requisite intent.

 Finally, the court's failure to instruct on the defense of diminished capacity *sua sponte* was not error. "In cases in which the prosecution advances a felony-murder theory, defendant is entitled, *upon a sufficient factual showing,* to instructions negating a conviction on a felony-murder theory if, at the time of the alleged offense, defendant could not form the specific intent . . . that serves as a necessary element of the felony charged." (*People* v. *Mosher* (1969) 1 Cal.3d 379, 392 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Ketchel* (1969) 71 Cal.2d 635, 641 [79 Cal.Rptr. 92, 456 P.2d 660]; italics added.) The record contains no evidence of diminished capacity due to mental defect, mental disease, or intoxication. Thus the court did not err in failing to instruct on this theory of defense.

The judgment is modified by reducing the degree of the crime to murder of the second degree and, as so modified, is affirmed. The cause is remanded to the trial court with directions to arraign and pronounce judgment on defendant in accordance with the foregoing ruling.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Appellant's petition for a rehearing was denied October 28, 1970.