# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, R.Q. WARD,**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**CHRISTOPHER A. QUICK**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201300341**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 29 April 2013.
**Military Judge**: LtCol Chris Thielemann, USMC.
**Convening Authority**: Commanding General, 3d Marine Aircraft Wing, Marine Corps Air Station Miramar, San Diego, CA.
**Staff Judge Advocate's Recommendation**: LtCol K.C. Harris, USMC.
**For Appellant**: Capt David Peters, USMC.
**For Appellee**: CDR Mary Grace McAlevy, JAGC, USN; Maj David N. Roberts, USMC; LT Lindsay Geiselman, JAGC, USN.

**31 October 2014**

---------------------------------------------------------
**PUBLISHED OPINION OF THE COURT**
---------------------------------------------------------

FISCHER, Senior Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of conspiring to distribute an indecent visual recording, wrongfully viewing an indecent visual recording, and indecent conduct in violation of Articles 81, 120c, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 920c, and 934.[1]  The

_____

[1] The members acquitted the appellant of three specifications of rape and one specification of fraternization.

1

members sentenced the appellant to six months of confinement, reduction to pay grade E-3, and a bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged, and except for the punitive discharge, ordered the sentence executed.

The appellant raises six assignments of error (AOE).[2] Having carefully considered the record of trial and the parties' pleadings, we find that the specification of the Additional Charge, wrongfully viewing an indecent visual recording, fails to state an offense.  We will set aside the guilty finding and dismiss the underlying charge and specification and in our decretal paragraph.  Arts. 59(a) and 66(c), UCMJ.

## I. Background

All charges against the appellant in this case stem from a group sexual encounter that occurred in the barracks on 1 July 2012.  Earlier that day, Private First Class (PFC) H remarked to several fellow Marines that he had not had sex in several months.  Corporal (Cpl) H offered to contact Ms. TR, believing she would agree to have sex with PFC H.  TR accepted Cpl H's invitation to come to the barracks and shortly after she arrived, PFC H and TR engaged in sexual acts in the appellant's room.  Following PFC H and TR's sexual encounter, the appellant and a former Marine, JM, entered the appellant's room and simultaneously engaged in sexual acts with TR.  During this sexual encounter, Cpl H used his smart phone to surreptitiously video record the three of them for a few seconds until TR saw what he was doing.  After the encounter, Cpl H showed the appellant the video recording and, at the appellant's request,

---

[2] The appellant raises the following AOEs:

I.  Article 120c(a)(1) violates the First Amendment because it criminalizes a substantial amount of protected speech.
II.  Article 120c(a)(1) violates the Fifth Amendment because it is unconstitutionally vague.
III.  The appellant's conviction for viewing an indecent visual recording was not legally and factually sufficient.
IV.  The indecent conduct specification, charged under clauses (1) and (2) of Article 134, fails to state an offense because it criminalizes conduct entitled to Constitutional protection and because Congress specifically superseded this charge in the latest version of the UCMJ.
V.  The military judge abused his discretion for failing to dismiss a member for actual and implied bias.
VI.  The appellant's sentence was overly severe given the results in companion cases.

2

Cpl H forwarded the video to the appellant.  Later that night, TR contacted military law enforcement and reported the sexual encounter with the appellant and JM as rape.

Additional facts necessary for the resolution of each AOE are developed below.

## II. Discussion

### A. Knowingly and Wrongfully Viewing an Indecent Visual Recording

Although not expressly assigned as error, we first consider whether the specification under the Additional Charge for indecent viewing states an offense under Article 120c.[3]  We find that it does not.[4]

Whether a specification states an offense is a question of law that is reviewed *de novo*.  *United States v. Crafter,* 64 M.J. 209, 211 (C.A.A.F. 2006).  A specification states an offense when it alleges every element of the offense, either expressly or by necessary implication, so as to give the accused notice and protection against double jeopardy.  *Id.;* RULE FOR COURTS-MARTIAL 307(c)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  In assessing whether the conduct alleged in the indecent viewing specification is prohibited by Article 120c, we apply the traditional canons of statutory construction.  *United States v. King,* 71 M.J. 50, 52 (C.A.A.F. 2012).  Unless ambiguous, the plain language of a statute will control unless it leads to an absurd result.  *Id.* (citing *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007)).

Article 120c's prohibition on indecent viewing criminalizes the knowing and wrongful viewing of "the private area of another person, without that other person's consent and under circumstances in which that other person had a reasonable expectation of privacy[.]"  10 U.S.C. § 920c(a)(1).  The term "private area" is defined as "the naked or underwear-clad

---

[3] The Specification under the Additional Charge states:

In that [the appellant], while on active duty, did, at or near San Diego, California, on or about 1 July 2012, knowingly and wrongfully view a visual recording of the private area of Ms. [TR], without her consent and under the circumstances in which she had a reasonable expectation of privacy.

[4] The parties thoroughly addressed Article 120c's application in AOEs I-III; therefore we found it unnecessary to specify this issue.

genitalia, anus, buttocks, or female areola or nipple." 10 U.S.C. § 920c(d)(2).

The indecent viewing specification at issue alleged that the appellant knowingly and wrongfully viewed "a visual recording of the private area of [the victim], without her consent and under the circumstances in which she had a reasonable expectation of privacy." Additional Charge Sheet.[5] Importantly, the specification did not allege that the appellant viewed the victim's "private area." Rather, it alleged that the appellant viewed "a *visual recording of* the [victim's] private area." (emphasis added). We find this distinction significant because viewing of the "private area" itself, not a visual recording, is the conduct proscribed by the plain language of the statute.

It is axiomatic that when a statute is clear and unambiguous, the plain meaning controls. But even if there were some reason to stray from a literal reading of Article 120c, the canons of statutory construction would still militate against an interpretation that criminalizes indecent viewing of a visual recording of a person's private area.

To begin with, sections of a statute should be construed in connection with one another as "a harmonious whole" manifesting "one general purpose and intent." Norman J. Singer, *Statutes and Statutory Construction* § 46:05 at 154 (6th ed. 2000) (footnote omitted). "Just as a single word cannot be read in

---

[5] Regarding this offense, the military judge advised the members of the following criminal elements:

> In the sole Specification of the Additional Charge, [the appellant] is charged with the offense of viewing an indecent visual recording, in violation of Article 120c, UCMJ. In order to find him guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt:
>
> One, that on or about 1 July 2012, on board Marine Corps Air Station Miramar, California, the accused knowingly and wrongfully viewed a visual recording of the private area of Ms. [TR].
>
> Two, that the accused did so without the consent of [TR].
>
> Three, that under the circumstances at the time of the charged offense, [TR] had a reasonable expectation of privacy.
>
> And, four, that the accused's conduct was wrongful.

Record at 1370-71.

isolation, nor can a single provision of a statute." *Smith v. United States*, 508 U.S. 223, 233 (1993). Article 120c's prohibition of indecent viewing of the private area is just the first of three related paragraphs. The second paragraph criminalizes knowingly making a visual recording of "the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy[.]" 10 U.S.C. § 920c(a)(2). The third paragraph criminalizes knowingly broadcasting or distributing "any such recording that the person knew or reasonably should have known was made under the circumstances proscribed in paragraphs (1) and (2)[.]" 10 U.S.C. § 920c(a)(3).

We are therefore acutely cognizant of the fact that Article 120c is not silent on the issue of visual recordings. Rather, Congress used clear and unambiguous language to expressly proscribe the making of and broadcasting of indecent visual recordings, as such recordings are expressly articulated in the second and third paragraphs of the statute. Consequently, the absence of any similarly clear proscription on the viewing of indecent visual recordings is significant. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citations and internal quotation marks omitted).

Under the canon of construction that "to express or include one thing implies the exclusion of the other," *Black's Law Dictionary* 620 (8th ed. 2004) (defining "*expressio unius est exclusio alterius*"), the express proscription of the making or broadcasting of indecent visual recordings implies that the viewing of indecent visual recordings is not proscribed. *See Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616-17 (1980) ("[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (citation and footnote omitted); *see also People v. Nichols*, 474 P.2d 673, 680-81 (Cal. 1970) (applying the maxim of *expressio unius est exclusio alterius* to conclude that the statutory proscription on arson did not include the burning of a car).

We also note that criminalizing the mere viewing of indecent visual recordings, as opposed to making and broadcasting such recordings, would entail a statute of

5

exceptionally broad reach.  If Congress had intended this statute to have such a broad reach, we would expect that intent to be clear on its face.  It cannot be supposed that the legislature would, through silence, criminalize a class of conduct that is even broader than the conduct proscribed by the express provisions of the statute.

Moreover, whenever possible, we eschew interpretations that render statutes constitutionally infirm.  *Crowell v. Benson*, 285 U.S. 22, 62 (1932); *see also* Singer, *supra*, § 45:11 at 68-69. Interpreting Article 120c to criminalize the mere viewing of a recording of indecent material would raise serious concerns about the statute's constitutionality under the First Amendment's overbreadth doctrine.[6]  A more constitutionally defensible interpretation is that Article 120c criminalizes the three things it proscribes on its face: indecent viewing of the private area itself, making an indecent visual recording of the private area, and broadcasting an indecent visual recording of the private area.

Similar statutes prohibiting voyeurism or the surreptitious viewing, photographing, or recording of a person's private areas without their consent and when the person has a reasonable expectation of privacy from such activity have been narrowly construed.  *See United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (upholding search warrant issued on suspicion that appellant recorded his sexual encounters without his partners' knowledge and implying that, although the surreptitiously taken photographs were not themselves contraband, they were evidence of the criminal act of surreptitious recording); *United States v. Rice*, 71 M.J. 719, 726 (Army Ct.Crim.App. 2012) (addressing Article 120c's predecessor, Article 120(k), UCMJ, 10 U.S.C. § 920 (2007) as a "peeping" statute and setting aside appellant's pleas of guilty because he "never articulated the facts necessary to establish that he observed or recorded another person's genitalia . . ."); *State v. Boyd*, 137 Wn. App. 910, 920 (Wash. Ct. App. 2007) (appellant convicted of peering up and taking pictures up the victims' skirts, but the pictures were used as evidence of his voyeurism and not separately prosecuted).

We have found no legal support to apply the expansive reading to the plain language of Article 120c that the Government advocates for here.  Consequently, we find the

---

[6] The appellant addresses these concerns at length in his first AOE.

specification of the Additional Charge fails to state an offense.[7]

## B. Indecent Conduct

In AOE IV, the appellant, for the first time on appeal, argues that his conviction for indecent conduct under Article 134, UCMJ fails to state an offense in light of the Supreme Court's holding in *Lawrence v. Texas*, 539 U.S. 558 (2003) and that Congress specifically superseded the charge of indecent conduct in the latest version of the UCMJ. Essentially, the appellant makes a due process challenge that his conviction for indecent conduct is unconstitutional as applied to the facts of his case.

We review *de novo* the appellant's constitutional challenge to Article 134. *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013). However, the appellant failed to raise this claim and develop facts at trial, and therefore we review for plain error. *Id.* In our plain error review, we will grant relief "only where: (1) there was error, (2) the error was plain and obvious, and, (3) that error materially prejudiced a substantial right of the [appellant]." *United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011) (citation omitted).

### 1. Indecent Acts and the 2012 Edition of the UCMJ

In 2007, the Article 134, UCMJ offense of "indecent acts with another" became subject to prosecution under Article 120(k), UCMJ as an "indecent act." *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), App. 23 at A23-15. In 2012, Congress created Article 120c, UCMJ to encompass the offenses in the 2007 version of Article 120(k); however, Article 120c was only "intended to criminalize non-consensual sexual misconduct that ordinarily subjects an accused to sex offender registration." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), App. 23 at A23-16. The 2012 edition of the Manual does not specifically include an "indecent act" charge under Article 120c or 134, UCMJ.[8]

---

[7] Accordingly, we need not further address AOEs I-III.

[8] In this case, the military judge's instruction to the members on the definition of indecent conduct was "that form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." Record at 1370. This instruction mirrors the definition of indecent conduct under Article 120(t)(12), UCMJ (2008 ed.).

The appellant argues that once Congress enacted Article 120c, indecent conduct was no longer an offense because it is not listed as a specific offense under the 2012 edition of the UCMJ and, thus, "Congress did not intend to criminalize private, consensual, group sex under the 2012 UCMJ." Appellant's Brief of 27 Jan 2014 at 58. We disagree.

Article 134, UCMJ, provides an avenue for the Government to charge offenses not specifically listed in the Manual. MCM (2012 ed.), Part IV at ¶ 60c(6)(c). However, the preemption doctrine prohibits application of Article 134 to conduct covered by other Articles in the Manual. *Id.* at ¶ 60c(5)(a). To trigger the preemption doctrine, "'it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way.'" *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010) (quoting *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979); MCM (2012 ed.), Part IV, ¶ 60c(1) (stating Article 134, UCMJ "makes punishable acts in three categories of offenses not specifically covered in any other article of the code"). Congress must "indicate through direct legislative language or express legislative history that particular actions or facts are limited to the express language of an enumerated article, and may not be charged under Article 134, UCMJ." *Anderson*, 68 M.J. at 387.

Because Article 120c was only "intended to criminalize non-consensual sexual misconduct that ordinarily subjects an accused to sex offender registration"[9] and Congress did not enact an Article criminalizing indecent acts in the 2012 edition of the Manual, we find this offense properly charged under Article 134.

Here, the appellant has not demonstrated that the 2012 Congressional amendment to Article 120 preempted the use of Article 134 to criminalize indecent conduct that is prejudicial to good order and discipline or as conduct of a nature to bring discredit upon the armed forces.

2. <u>As-Applied Due Process Challenge to Indecent Conduct Charge</u>

The appellant next argues that because his charges represented a private, consensual sexual encounter between three parties, and because no aggravating factors were listed in the

---

[9] MCM (2012 ed.), App. 23 at A23-16.

8

specification, and no *Marcum* factors[10] were instructed on by the military judge, his conviction for indecent conduct cannot stand. We disagree.

Assuming arguendo that we accept the appellant's underlying premise that the sexual encounter between the appellant, TR, and JM was consensual,[11] this was not a wholly private and discreet sexual liaison. Legally sufficient evidence was adduced at trial that this conduct was prejudicial to good order and discipline and service discrediting. The sexual activity took place in an unlocked barracks room and two other service members were present during at least a portion of the sexual encounter. Moreover, one of the room's windows was left open throughout the encounter and Cpl H video recorded the conduct through the open window. *See Marcum*, 60 M.J. at 207 (quoting *Parker v. Levy*, 417 U.S. 733, 758 (1974)) ("The fundamental necessity for obedience and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it.").

The appellant's argument that this was a wholly private exchange without aggravating factors is untenable. We find that the same factors the members considered in finding the appellant's conduct was prejudicial to good order and discipline and service discrediting constituted the aggravating factors that took this case out of the wholly private setting envisioned in *Lawrence*. "[W]here, as here, the predicate sexual conduct is criminal because of some additional factor (in this case, the violation of clauses 1 and 2 of Article 134, UCMJ), the burden of demonstrating that such conduct should nonetheless be

---

[10] *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004). Those factors include:

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*? Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

*Id.* at 206-07 (internal citation omitted).

[11] Simply because the appellant was acquitted of the alleged forcible sexual acts does not dictate that the sexual encounter was consensual. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984) ("acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt.").

9

constitutionally protected rests with the defense at trial." *Goings*, 72 M.J. at 207 (citation omitted).

The appellant's argument that the military judge was required to instruct on the *Marcum* factors pursuant to *United States v. Castellano* also fails under the circumstances of this case. 72 M.J. 217, 221 (C.A.A.F. 2013) (holding in cases, "where, but for the presence of a *Marcum* factor, the act of [consensual] sodomy would not be subject to criminal sanction," the trier of fact must determine whether a *Marcum* factor exists); *see also United States v. Howard*, 72 M.J. 406 (C.A.A.F. 2013) (summary disposition) (holding that conduct charged under Article 120(k), UMCJ, was not plainly "private" when the sexual activity "occurred while in the presence of two additional servicemembers in the unlocked barracks room of two other servicemembers who were reasonably likely to unintentionally observe the sexual activity" and "therefore the failure of the military judge to raise a *Lawrence* issue *sua sponte* was not plain error").

In sum, the appellant falls far short of establishing error, let alone plain and obvious error. Accordingly, we reject the appellant's due process challenge to his conviction for indecent conduct under Article 134, UCMJ.

### III. Sentence Reassessment

Because of our action on the findings and the principles outlined in *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), *United States v. Cook*, 48 M.J. 434, 438 (C.A.A.F. 1998), and *United States v. Sales*, 22 M.J. 305, 307-09 (C.M.A. 1986), conducting a reassessment of the sentence would not be an appropriate option within the context of this case. "A 'dramatic change in the penalty landscape' gravitates away from the ability to reassess" a sentence. *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (quoting *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003)).

We find that there has been a dramatic change in the penalty landscape and do not believe that an appellate court can reliably determine what sentence the members would have imposed. *Riley*, 58 M.J. at 312.

### IV. Conclusion

The findings of guilty to the Additional Charge and its specification are set aside and the Additional Charge and its

specification are dismissed.  The remaining findings of guilty are affirmed.  The sentence is set aside.  We return the record to the Judge Advocate General for remand to an appropriate CA with a rehearing on the sentence authorized.[12] Following post-trial processing the record will be returned to the Court for completion of appellate review.  *Boudreaux v. U.S. Navy-Marine Corps Court of Military Review*, 28 M.J. 181 (C.M.A. 1989).

Chief Judge MITCHELL and Senior Judge WARD concur.


For the Court



R.H. TROIDL
Clerk of Court

---

[12] Due to our action relative to the sentence, AOE VI, relating to sentence disparity in companion cases, is presently moot.  We find no merit to and summarily dismiss AOE V concerning the alleged bias of a panel member. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).