[Crim. No. 12368.   Second Dist., Div. One.   Aug. 30, 1966.]

THE PEOPLE, Plaintiff and Appellant, v. ELMO McGENNIS et al., Defendants and Respondents.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Richard G. Kolostian, Deputy City Attorney, for Plaintiff and Appellant.

Walter L. Gordon, Jr., for Defendants and Respondents.

McCOY, J. pro tem.*—Each of the 26 defendants was charged with a violation of sections 43.13.1 (count I) and 43.13.2 (count II) of the Los Angeles Municipal Code, sometimes called the "visiting ordinances." On their respective motions, each of the complaints was dismissed by the Municipal Court for the Los Angeles Judicial District. The People appealed to the Appellate Department of the Superior Court for Los Angeles County which, by a divided court, affirmed the judgments of dismissal. Upon affirmance of the judgments, all the judges of the appellate department joined in certifying the cases to us under rule 63, subdivision (a), California Rules of Court. We accepted the transfer as necessary to settle an important question of law.

The complaints against the several defendants are identical. Each is charged as follows: Count I, that on November 13, 1965, he "did wilfully and unlawfully resort to, attend, and be in a house, room, and other place where there was a gambling device, gambling equipment and gambling paraphernalia,

*Assigned by the Chairman of the Judicial Council.

which place was barred, barricaded, built, and protected in such a manner as to make ingress and access difficult to police officers,'' in violation of section 43.13.1 of the Los Angeles Municipal Code; and, count II, that on the same day he ''did wilfully and unlawfully and knowingly visit, frequent, and be present at and within a house, room, apartment, stand and place used in whole and in part as a gambling house, and at a place where a game was being played, conducted, dealt and carried on with cards, dice, and other device for money, checks, chips, credit, pennants, cigars, candy, merchandise, and other valuable things, and representative of value,'' in violation of section 43.13.2 of the Los Angeles Municipal Code.

All the complaints were dismissed by the municipal court on February 10, 1966, on the ground of unconstitutionality of the two sections of the municipal code on the authority of *People v. Franks*, 226 Cal.App.2d 123 [37 Cal.Rptr. 800].

In *People* v. *Franks*, 226 Cal.App.2d 123 [37 Cal.Rptr. 800], decided in April 1964, the court held (p. 124) ''the subject of gambling has been preempted by the state to the extent that sections 43.13.1 and 43.13.2 of the Los Angeles Municipal Code are invalid.'' In *In re Hubbard*, 62 Cal.2d 119 [41 Cal.Rptr. 393, 396 P.2d 809], decided in November 1964, the Supreme Court sustained the validity of section 4140.7 of the Long Beach Municipal Code proscribing the playing of certain ''games of chance.''

On its appeal in the cases before us the People contended that *Franks* was impliedly overruled by *Hubbard*. In affirming the judgments of dismissal, the majority of the court said that they believed it was the duty of the municipal court and of the appellate department ''to follow the specific ruling of the District Court of Appeal in the *Franks* case until either higher court expressly overrules *Franks*, unless it is clear that *Franks* is necessarily overruled, by implication, by *Hubbard*,'' and that they ''cannot see that the two decisions are necessarily incompatible.'' Judge Aiso, dissenting, did not feel that the two sections here at issue ''are invalid because of being within an area preempted by the general law of the state,'' saying that, in his opinion, *Franks* is not dispositive of these cases in view of *Hubbard*, ''holding that differing from the field of illegal sexual activity, the state has not completely preempted the field of gambling.''

The issue here, as it was in *Franks*, is whether the subject of gambling has been preempted by the state to the extent that

sections 43.13.1 and 43.13.2 of the Los Angeles Municipal Code are constitutionally invalid. We have concluded that that question must be answered in the negative.

The issue of preemption arises by reasons of sections 6 and 11 of article XI of the California Constitution. Section 6 provides that chartered cities may "make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, . . ." Section 11 reads: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

The question of preemption has been before the appellate courts on innumerable occasions. The general rules in such case were recently summed up in *In re Lane,* 58 Cal.2d 99 at pp. 102, 103 [22 Cal.Rptr. 857, 372 P.2d 897] : ██ "A local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by the general law. (Cal. Const., art. XI, § 11; *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674, 682 [3 Cal.Rptr. 158, 349 P.2d 974] ; *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1, 5 [2] [330 P.2d 385] ; *Tolman* v. *Underhill,* 39 Cal.2d 708, 712 [4] [249 P.2d 280] ; *Pipoly* v. *Benson,* 20 Cal.2d 366, 370 [5] [125 P.2d 482, 147 A.L.R. 515] ; *Natural Milk etc. Assn.* v. *City etc. of San Francisco,* 20 Cal.2d 101, 108 [1] [124 P.2d 25].)

██ "Whenever the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, the entire control over whatever phases of the subject are covered by state legislation ceases as far as local legislation is concerned. *Pipoly* v. *Benson, supra,* 20 Cal.2d 366, 371.)

██ "In determining whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the 'whole purpose and scope of the legislative scheme' and are not required to find such an intent solely in the language used in the statute. (*Tolman* v. *Underhill, supra,* at p. 712 [6] ; *Abbott* v. *City of Los Angeles, supra,* at pp. 682 [9], 684.) "

In applying these rules we are not limited, as was the appellate department, to a determination of the compatibility of the *Franks* and *Hubbard* cases. ██ We are bound, however, by the rule "that a later decision overrules prior decisions which conflict with it, whether such prior decisions are mentioned and commented upon or not. Mr. Chief Justice Gibson in *Sei Fujii* v. *State of California,* 38 Cal.2d 718, 728 [242 P.2d 617], thus aptly states the correct rule: '. . . it is settled that the

authority of an older case may be as effectively dissipated by a later trend of decision as by a statement expressly overruling it.' " (*In re Lane,* 58 Cal.2d 99, 105 [22 Cal.Rptr. 857, 372 P.2d 897].)

The latest and certainly the most definitive case relating to state preemption in the field of gambling is, of course, *In re Hubbard,* 62 Cal.2d 119 [41 Cal.Rptr. 393, 396 P.2d 809]. The court there sustained the validity of a section of the Municipal Code of Long Beach forbidding the playing of certain games of chance for money. In our opinion *Hubbard* overrules *Franks,* and the rules stated by the court in *Hubbard* as the grounds for its decision are controlling here.

The discussion of the issue of preemption in *Hubbard* is prefaced with the statement (p. 124) that, in view of the controlling constitutional provisions, defendants' claim "must be tested against two separate concepts. The first involves the question whether there is a 'conflict' between the city ordinance and the general laws, as that term is used in section 11 of article XI. The second arises from the allegedly exclusive power of a charter city to 'make and enforce all laws and regulations in respect to municipal affairs,' as that phrase is used in section 6.'"

As to the first problem, the court said "it is clear that the regulation of gambling in any form is within the purview of local police power. . . . The ordinance, therefore, is valid if not in 'conflict' with general law. . . . There are many situations wherein municipal police power may operate on the same subject matter embraced in state legislation. This is particularly true when the local regulations purport only to supplement the general by additional reasonable requirements, or are in aid and furtherance thereof (*Pipoly* v. *Benson,* 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515], and cases cited therein).'"

The determinative factor in all such cases is whether the field has been fully occupied by general state law in which the local ordinance purports to operate. On this point *Hubbard* is explicit (p. 125): "The contention that the Legislature intended to occupy the entire field of gambling is without merit. Although the various code sections above referred to*

---

*"Section 330 is a portion of chapter 10 of title 9 of part 1 of the Penal Code, all of which is devoted to the subject of gambling. Other sections prohibit slot machines and similar mechanical devices (§§ 330a through 335a), make it an offense to permit minors to play at any game of chance in a saloon (§ 336), authorize counties with a population exceeding 4,000,000 to regulate or prohibit draw poker, and prohibit send-

are extensive in their scope, they are far from being all inclusive. While they may include complete regulation of horse racing and prize fighting, and certainly prohibit all forms of lottery and some forms of gaming, they certainly do not prohibit all forms of gambling. Draw poker, in some situations, is expressly left to local option. We are not aware of any state legislation which purports to prohibit private betting on the outcome of a future event (certainly a form of gambling), other than in regard to elections, boxing, horse racing, or other sporting events. There are any number of other forms of gambling which the general laws do not regulate or prohibit. It follows that the state has not preempted the field, if the subject matter thereof be deemed to be gambling in general.''

The court also held in *Hubbard* that there is strong evidence that it was not the legislative intent to occupy the entire field of gaming, although state law does prohibit the playing of certain specific games. As to this contention the court concluded (p. 127) that ''By limiting the general statutes to regulation or prohibition of specifically enumerated activities, the Legislature did not intend to prevent local authority from legislating on those subjects in regard to which the former are silent.''

The court then turned to the impact of the general laws on the constitutional right of a chartered city ''to 'make and enforce all laws and regulations in respect to municipal affairs.' '' ''This question,'' said the court (p. 128), ''must be answered in the light of the facts and circumstances surrounding each case. This does not mean that there are no standards which a chartered city or county may apply when attempting to determine its right to legislate in a specific field. ■ Analysis of the many prior decisions on this subject indicates that although the language differs from case to case, the rationale of all have one thing in common, that is, that chartered counties and cities have full power to legislate in regard to municipal affairs unless: (1) the subject matter has been so fully and completely covered by general law as to

---

ing a minor or soliciting the entry of any person into a gambling house. In addition to the concept of gaming, state law prohibits and controls many other forms of gambling. The same chapter of the Penal Code implements the constitutional provisions regarding horse racing by prohibiting bookmaking and otherwise placing controls on betting at race tracks (Pen. Code, §§ 337a-337h), or other sporting events (§§ 337b-337e). Section 26 of article IV of the Constitution requires the Legislature to enact laws prohibiting lotteries, which it has done via chapter 9 of title 9 of part 1 (§§ 319-326) of the Penal Code. Betting on a boxing match is prohibited by Penal Code section 412, which is a portion of title 11 of part 1.'' (Fn. 4, 62 Cal.2d 123.)

clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.''

Tested by these rules, sections 43.13.1 and 43.13.2 of the Los Angeles Municipal Code are a valid exercise of the local police power. The general laws of the state do not forbid as criminal the conduct forbidden by these sections. This omission is significant. If, as the court said in *Hubbard* (p. 126), the Legislature had intended to regulate such conduct, ''it would have been very simple to say just that.'' ▮ It follows from the decision in *Hubbard* that the state has not occupied the field of gambling or gaming to the extent that the two sections of the Los Angeles Municipal Code before us are in conflict with the general laws. We are equally satisfied that each of these sections is no more than ''a regulation of a municipal affair, and not exclusively a matter of statewide concern.''

The judgments of dismissal in each of the cases before us are reversed, and each of said cases is remanded to the Municipal Court of the Los Angeles Judicial District with directions to deny the motions of the several defendants to dismiss the complaints against them and to take such further action against each of said defendants as may be required by law.

Wood, P. J., and Lillie, J., concurred.