[No. B150951. Second Dist., Div. Five. Dec. 20, 2002.]

DONALD HARRAHILL et al., Plaintiffs and Appellants, v.
CITY OF MONROVIA, Defendant and Respondent.

## COUNSEL

Michael P. Farris, J. Michael Smith, James R. Mason III; Lurie, Zepeda, Schmalz & Hogan, Andrew W. Zepeda and Donna M. Dean for Plaintiffs and Appellants.

Craig A. Steele, City Attorney; Richards, Watson & Gershon, Mitchell E. Abbott and Patrick K. Bobko for Defendant and Respondent.

## OPINION

**ARMSTRONG, J.**—Plaintiffs appeal the judgment of the trial court finding that a City of Monrovia (City) ordinance was not a "truancy ordinance" but was a "police power ordinance," the effect of which was to regulate off-campus juvenile activity during school hours. We concur with the trial court, and so affirm the judgment.

### FACTS

In 1994, the City adopted an ordinance (the Ordinance)[1] that prohibits school-age children who are subject to the compulsory education laws from being in public places other than school between the hours of 8:30 a.m. and 1:30 p.m. on days when school is in session. Plaintiffs challenged the ordinance as unconstitutional on two grounds: First, they maintained that the City Council has no authority to legislate in the field of education, that field being delegated by the Legislature exclusively to local school districts. "If

---

[1]The Ordinance, as amended, reads: "*Daytime Curfew.* It is unlawful for any minor under the age of eighteen years, who is subject to compulsory education or to compulsory continuation education to loiter, idle, wander, or be in or upon the public streets, highways, roads, alleys, parks, playgrounds, or other public grounds, public places, public buildings, places of amusement and eating places, vacant lots or any unsupervised place during the hours of 8:30 a.m. and 1:30 p.m. on days when school is in session. This section does not apply:
"A. When the minor is accompanied by his or her parent, guardian, or other adult person having the care or custody of the minor; or
"B. When the minor is on an emergency errand directed by his or her parent or guardian or other adult person having care or custody of the minor; or
"C. When the minor is going or coming directly from or to their place of gainful employment or to or from a medical appointment; or
"D. To students who have permission to leave school campus for lunch or school related activity and have in their possession a valid, school issued, off-campus permit.
"E. When the minor is exempt by law from compulsory education or compulsory continuation education; or
"F. When the minor is authorized to be absent from his or her school pursuant to the provisions of California Education Code Section 48205, or any other applicable State or federal law." (Monrovia Mun. Code, § 9.28.030.)

this Ordinance is an educational ordinance . . . , then it is *ultra vires* and unconstitutional. Monrovia is a city and not a school board. School boards have the power to enact supplemental rules governing education . . . . Cities have no power to enact supplemental education ordinances."

Plaintiffs also maintained that the Ordinance cannot be upheld as a valid exercise of the police power, "because cities (excepting charter cities) only have power to enact police ordinances 'not in conflict with general laws.' (Cal. Const., art. XI, § 7.) Local 'police power' ordinances that conflict with general laws are preempted, and California courts have clarified that '[a] conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534]). Education in general, and compulsory attendance in particular, are 'areas fully occupied by general law.' Monrovia's Ordinance duplicates much of California's compulsory attendance law and contradicts the rests. It is therefore preempted."

■ We note at the outset that plaintiffs' challenge is to the facial validity of the Ordinance. We therefore look only to the language of the Ordinance itself, and are unconcerned with the application of the Ordinance under any particular factual scenario, or with the supposed reduction in crime rates during school hours since adoption of the Ordinance. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069 [40 Cal.Rptr.2d 402, 892 P.2d 1145] [a facial challenge focuses on "the text of the measure itself, not its application to the particular circumstances of an individual"].) Neither are we concerned with the characterization of the Ordinance as a truancy ordinance by the City's Chief of Police. (See *Los Angeles City School Dist. v. Odell* (1927) 200 Cal. 637, 641 [254 P. 570] [a statute's title " 'cannot be used for the purpose of restraining or controlling any positive provision of the act.' "].) For this reason, we deny plaintiffs' request for leave to produce additional evidence or, in the alternative, for judicial notice.

## DISCUSSION

### 1. The Ordinance as an Ultra Vires Act

■ Plaintiffs' first argument is based on the premise, long established in California law, that education is "exclusively the function of the state which cannot be delegated to any other agency." (*Piper v. Big Pine School Dist.* (1924) 193 Cal. 664, 669 [226 P. 926].) Indeed, not only is education exclusively a state function, but cities may not enact supplemental legislation to benefit education. (See, e.g., *City and County of San Francisco v.*

*Patterson* (1988) 202 Cal.App.3d 95, 101-102 [248 Cal.Rptr. 290].) The City does not challenge the premise. Rather, it maintains that the Ordinance is a valid exercise of its police power, and is not, as plaintiffs would characterize it, a supplemental education ordinance.

Plaintiffs' argument goes as follows: As our Supreme Court has held, the state's truancy laws are educational, not penal, in nature. (*In re James D.* (1987) 43 Cal.3d 903, 915 [239 Cal.Rptr. 663, 741 P.2d 161].) The sole agency of local government which possess any authority regarding education is a local school district. (Cal. Const. art. IX, § 14.) Because compulsory attendance and truancy enforcement are clearly within the education power of the state, they are not subject to a municipality's constitutional article XI, section 7 police power.

In support of their argument, plaintiffs cite Welfare and Institutions Code sections 256, 258, and 625.5, which authorize curfew ordinances "prohibiting minors from remaining in or upon the public streets unsupervised after hours." Plaintiffs maintain that "this express legislative authorization of police ordinances establishing nighttime curfews only demonstrates the *lack* of any authority for an education ordinance establishing a daytime curfew during school hours." Plaintiffs also seek to surmise the City's purpose in enacting the Ordinance: "If the City's primary goal had really been to reduce juvenile daytime crime, it would logically seek to remove children from the streets when any were found violating the Ordinance. But the City did no such thing. Children who were found on the streets were issued a citation and left on the streets. It is obvious that the harm to be prevented is unexcused absence from school, not vandalism or other juvenile crime. That makes this an education ordinance, and that makes it *ultra vires*."

We are not persuaded. With respect to the last argument, plaintiffs' conclusion that the City must be concerned only with truancy and not with crime prevention or victimization simply does not follow from the fact that violators are issued citations and left on the streets. Indeed, if unexcused absences were the City's primary concern, one would think that a minor found in violation of the statute would be returned to school, resolving the minor's "truant" status.

As plaintiffs acknowledge, the California Constitution is the source of the City's police power, not the Welfare and Institutions Code. (Cal. Const., art. XI, § 7.) "A city's police power under this provision can be applied only within its own territory and is subject to displacement by general state law but otherwise is as broad as the police power exercisable by the Legislature itself." (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 140 [130

Cal.Rptr. 465, 550 P.2d 1001].) Obviously, if the Ordinance is a valid exercise of the City's police power, it is not ultra vires. The critical issue, then, is can a municipality exercise its police power to prohibit the presence of unsupervised minors in public places during normal school hours?

Plaintiffs say no; however, they arrive at that answer by simply labeling the ordinance "educational" and reiterating that only the state or a school board may regulate education. We agree with plaintiffs that compulsory attendance and truancy enforcement are within the educational power of the state, and cannot be drawn under the police power of a municipality. However, the Ordinance, on its face, does not seek to compel school attendance or to enforce truancy provisions. Rather, the Ordinance simply states that a minor who is subject to the compulsory education laws and who is absent from school without excuse between the designated hours will be subject to citation if the minor chooses to be unsupervised in a public place within the City. Thus, a minor who skips school to go to the beach, or who simply stays at home, is every bit as truant as one who hangs out at an arcade, or park, or other public place within the City. However, the Ordinance is not addressed to regulating the conduct of the truant who stays home or who leaves the City limits. It only affects truants who are present in public in the City during certain hours when they are required to be in school.

The rationale for such an ordinance can be readily surmised: School-aged children, with certain exceptions, are required to be in school. When in school, they are under the supervision of adults. Parents, police, and the community at large rely on the schools to supervise the minors in their charge. When children are absent from school without excuse, they are no longer under the watchful eye of school authorities and, for that reason, are at greater risk of both being harmed and of causing harm to others. The Monrovia City Council recognized the risks associated with minors who the community assumes are being supervised at school but who in fact are not, and sought to address this problem by making it unlawful for a child who is supposed to be in school to be unsupervised in a public place. This is a classic exercise of a city's police power. (See, e.g., *Hodgson v. Minnesota* (1990) 497 U.S. 417, 444 [110 S.Ct. 2926, 2942, 111 L.Ed.2d 344] ["The State has a strong and legitimate interest in the welfare of its young citizens, whose immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely"]; *Hutchins v. District of Columbia* (D.C. Cir. 1999) 188 F.3d 531, 542 ["There can be no serious dispute that protecting the welfare of minors by reducing juvenile crime and victimization is an important governmental interest"].) The fact that the Ordinance makes reference to the compulsory education laws simply does not render it an education ordinance.

## 2. *Preemption*

Plaintiffs next argue that, even if the Ordinance is a proper exercise of police power, it is preempted by state law.

■ Under article XI, section 7 of the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." " 'Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regulations in aid and furtherance of the purpose of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in themselves unreasonable.' " (*Pipoly v. Benson* (1942) 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515].) " 'There are many situations wherein municipal police power may operate on the same subject matter embraced in state legislation. This is particularly true when the local regulations purport only to supplement the general by additional reasonable requirements, or are in aid and furtherance thereof.' " (*People v. McGennis* (1966) 244 Cal.App.2d 527, 531 [53 Cal.Rptr. 215].) Thus, it is well settled that the preemption doctrine does not preclude a city from exercising its police power on a subject simply because the Legislature has also enacted a law on the same subject.

However, " 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' [Citations.]

" 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.]

"Local legislation is 'duplicative' of general law when it is coextensive therewith. (See *In re Portnoy* (1942) 21 Cal.2d 237, 240 [131 P.2d 1] [finding 'duplication' where local legislation purported to impose the same criminal prohibition that general law imposed].)

"Similarly, local legislation is 'contradictory' to general law when it is inimical thereto. (See *Ex parte Daniels* (1920) 183 Cal. 636, 641-648 [192 P. 442, 21 A.L.R. 1172] [finding 'contradiction' where local legislation purported to fix a lower maximum speed limit for motor vehicles than that which general law fixed].)

"Finally, local legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully

occupy' the area [citation] or when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality [citations]." (*Sherwin-Williams Co. v. City of Los Angeles, supra*, 4 Cal.4th at pp. 897-898.)

Plaintiffs maintain that "Monrovia's Ordinance violates preemption in all three ways . . . . As amended, the Ordinance *duplicates* state law insofar as it 'makes it unlawful to violate compulsory attendance'; *contradicts* state law as it pertains to warrantless stops, the threshold for violations, and the punishments imposed; and *enters* the fully occupied field of compulsory education and truancy."

### a. *The Ordinance does not duplicate state law*

Plaintiffs argue that "The Ordinance makes it a violation of city law to violate state law: . . . If a student skips school, the school will call the police to have them come to the school to issue a citation. The student is cited for skipping school, but state law already prohibits skipping school. This is duplication."

As noted above, a student who skips school by staying home violates state law but not the Ordinance. Thus, contrary to plaintiffs' position, the Ordinance is not coextensive with, and therefore not duplicative of, the state education law. If, in fact, minors are being cited as described by plaintiffs in the preceding paragraph, they are not being cited pursuant to the terms of the Ordinance. While that fact may subject the Ordinance to an "as applied" challenge, it has no bearing on a facial challenge to its validity.

### b. *The Ordinance does not contradict state law*

"[L]ocal legislation is 'contradictory' to general law when it is inimical thereto." (*Sherwin-Williams Co. v. City of Los Angeles, supra,* 4 Cal.4th at p. 898.) Stated another way, "[d]irect conflict exists when the ordinance prohibits conduct which is expressly authorized by state law." (*Sports Committee Dist. 37 A.M.A., Inc. v. County of San Bernardino* (1980) 113 Cal.App.3d 155, 159 [169 Cal.Rptr. 652].)

Plaintiffs argue that the Ordinance contradicts state law because it provides for different penalties than those set forth in the Education Code.

The Education Code provides no penalty for the first three times a minor is absent without excuse. Upon the fourth absence (which the statute defines as truant), a warning may be issued by any peace officer, which becomes a part of the student's permanent record. (Ed. Code, §§ 48263, 48264.5, subd. (a).) Upon the fifth absence (second truancy), the student may be assigned to an after school or weekend study program. (Ed. Code., § 48264.5, subd. (b).) Upon the sixth absence (third truancy), the minor is referred to the student attendance review board, or truancy mediation program. (Ed. Code, § 48264.5, subd. (c).) And upon the seventh absence (fourth truancy), the student is subject to the jurisdiction of the juvenile court, adjudged a habitual truant, and made a ward of the court. (Ed. Code, § 48265.5, subd. (d).) In contrast, under the Ordinance, a minor is subject to citation the first time he or she is found in violation of the Ordinance, and may be fined $127 or ordered to serve 27 hours of community service. The second infraction carries a $200 fine, while each subsequent citation is subject to a fine of $500.

From the foregoing facts, plaintiffs argue: "Thus, under state law a student cannot be summoned into court until his seventh absence. Indeed, the California Supreme Court has said that use of the Student Attendance Review Board (SARB) is 'a condition precedent to the juvenile court' in a truancy matter. (*In re Michael G. v. Superior Court of Fresno County* (1988) 44 Cal.3d 283, 290 [243 Cal.Rptr. 224, 747 P.2d 1152].) But in Monrovia, there is no requirement that the student be referred to a SARB before being taken to court for a violation of the Ordinance. Under the Ordinance, the student could be fined a total of $2,327 from his six previous trips to court before the 'condition precedent' has been satisfied for the first trip to the courthouse under state law."

However, the court appearance to which a minor is subject under the Ordinance is a noncriminal proceeding in juvenile traffic court before a juvenile traffic referee. Enforcement of the Ordinance does not set in motion the prospect that the minor will be adjudged a habitual truant and made a ward of the juvenile court.

In *Sherwin-Williams Co. v. City of Los Angeles, supra,* 4 Cal.4th 893, the Supreme Court discussed the test of whether the Los Angeles ordinance regulating the display of aerosol paint cans was "contradictory" to the state statute regulating the sale of aerosol paint cans to minors. Said the court: "We must next determine whether the ordinance contradicts the statute. It

does not. The former is not inimical to the latter. As the description in the preceding paragraph makes clear, the ordinance does not prohibit what the statute commands or command what it prohibits." (*Id.* at p. 902.)

So too here, the Ordinance is not inimical to the state truancy laws. It neither prohibits conduct which the state law mandates, nor mandates that which the state law prohibits. The Ordinance does not conflict or interfere with the enforcement of the state laws regulating truancy.[2] It has nothing to say regarding how truancy officers are to pursue habitual truants. *Sherwin-Williams* makes clear that the fact that both laws concern the same subject matter does not by itself render them contradictory.

c.   *The state Legislature has not fully occupied the field*

Finally, plaintiffs maintain that the Ordinance is preempted because the state has "fully occupied" the field of truancy.

"[L]ocal legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area (see, e.g., *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* [(1985)] 39 Cal.3d [878,] 886 [218 Cal.Rptr. 203, 705 P.2d 876]), or when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality [citations]." (*Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th at p. 898.)

In order to determine whether state law fully "occupies the field," either by direct legislation or by implication, "the 'field' involved should first be defined." (*In re Hubbard* (1964) 62 Cal.2d 119, 125 [41 Cal.Rptr. 393, 396 P.2d 809].) Plaintiffs maintain that the "field" at issue is "truancy," while the City counters that the "field" is "the policing of its streets during the specified daylight hours, and the prevention of juvenile crime and juvenile victimization during those hours." We concur with the City that the "field" at issue is the regulation of off-campus juvenile activity during school hours.

---

[2]Plaintiffs inform us that "It is critical to note that the City of Monrovia police have stopped enforcing the state truancy law." Whether or not true, that information is irrelevant to our review of plaintiffs' facial challenge to the Ordinance.

And there is no indication that the Legislature has sought to occupy this field, either expressly or by implication.

The Ordinance has been in effect since 1994. As plaintiffs note, at the time of its enactment the Ordinance generated national attention, and has been the model for local legislation in some 70 California cities. Since 1994, the Legislature has on a number of occasions amended the state truancy laws, but has never declared that those laws are preemptive of local ordinances such as the one at issue here. For example, the Legislature amended the Education Code to provide that a truant may be required to attend makeup classes conducted on the weekend (Ed. Code, § 48264.5, amended by Stats. 2001, ch. 734, § 29); to broaden the power of the courts to require parents of truants to take certain action regarding enrollment of their children in school (Ed. Code, § 48293, amended by Stats. 2000, ch. 465, § 1); and to broaden the definition of "truancy" (Ed. Code, § 48260, amended by Stats. 1995, ch. 19, § 1, pp. 36, 37). On any of these occasions, the Legislature could have declared that the state truancy laws preempt local juvenile daytime curfew ordinances. The fact that it did not is significant. (*Suter v. City of Lafayette* (1997) 57 Cal.App.4th 1109, 1119-1120 [67 Cal.Rptr.2d 420] [Legislature's failure to use language expressly preempting field in wake of court decisions may be taken as evidence of intention not to preempt the field].)

In short, we conclude that the Ordinance is a proper exercise of the police power of the City, and is not preempted by state law. Accordingly, we affirm the judgment.

### DISPOSITION

The judgment is affirmed.

Grignon, Acting P. J., concurred.

**MOSK, J.**—I respectfully dissent and would rule that the ordinance is preempted by state law.

"Truancy has long been a concern of the state. . . ." (*In re Michael G.* (1988) 44 Cal.3d 283, 290 [243 Cal.Rptr. 224, 747 P.2d 1152].) California has enacted compulsory education statutes that establish a comprehensive mechanism for dealing with student absenteeism. (Ed. Code, § 48260 et seq.) Those statutes define a truant as a student "who is absent from school without valid excuse three full days in one school year or tardy or absent for more than any 30-minute period during the schoolday without a valid excuse on three occasions in one school year, or any combination thereof." (Ed. Code, § 48260, subd. (a).)

The state truancy scheme provides discipline for students' failure to attend school, starting with a written warning and escalating for repeated absences—from additional school time and a truancy mediation program up to jurisdiction of the juvenile court under section 601 of the Welfare and Institutions Code. (Ed. Code, § 48264.5, subds. (a)-(d).) If made a ward of the court, the truant is subject to terms of public service, fines, mandatory completion of a truancy prevention program, and the revocation of driving privileges. (Ed. Code, § 48264.5, subd. (d).) The Supreme Court has stated that "[t]he most important overall change [in truancy law] was to require referral of truants to school attendance review boards before juvenile court intervention." (*In re Michael G., supra,* 44 Cal.3d at p. 290.) In addition, there are measures, including penal sanctions, against parents of truants. (Ed. Code, § 48290 et seq.)

The City of Monrovia's (Monrovia) ordinance conflicts with the state's comprehensive system for dealing with truancy. The ordinance provides that, with some exceptions, any student subject to California's compulsory education laws who is found at specified places outside school during certain school hours on school days may be cited. Citations require the students to appear in court before a traffic referee. Students are fined in amounts up to $500 per citation and may also be required to perform community service. Thus, contrary to the state scheme, Monrovia has, in effect, criminalized truancy from its inception. Monrovia's solution of imposing financial penalties and community service on children may interfere with the state's remedy of compelling the student to be in school, including after school and school weekend programs.

The California Supreme Court has stated in connection with truancy that "[t]he Legislature's move towards utilizing the school attendance review boards as a condition precedent to the juvenile court's intervention is understandable and in keeping with legal commentary calling for greater participation of school and social welfare professionals, even to the exclusion of the juvenile court's jurisdiction. [Fn. omitted.]" (*In re Michael G., supra,* 44 Cal.3d at p. 290.) Monrovia's ordinance refers absentee students to the judicial system without the state-mandated program for "participation of school and social welfare professionals." (*Ibid.*)

Monrovia's ordinance imposes different and more severe sanctions than does state law for the same behavior. Because the law conflicts with the state's general law regulating truancy, it is preempted. (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 898 [16 Cal.Rptr.2d 215, 844 P.2d 534] ["local legislation is 'contradictory' to general law when it is inimical thereto']; *Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32, 47 [41 Cal.Rptr.2d 393] [local

ordinance imposing a longer period of notice of rental rate increases conflicts with state law and is preempted; "where a statute has set the amount of notice required, the municipality may not impose further requirements of additional notice"]; *Tri County Apartment Assn. v. City of Mountain View* (1987) 196 Cal.App.3d 1283, 1298 [242 Cal.Rptr. 438] [municipal ordinance requiring longer period of notice for rent increases than state law required "conflicts with the legislative scheme" and is preempted]; *Ex parte Daniels* (1920) 183 Cal. 636, 647 [192 P. 442, 21 A.L.R. 1172] [local ordinance setting speed limit lower than that set by state law conflicts with state law and is preempted].)

I recognize that the Monrovia ordinance may be an effective method to combat the problem of truancy. Yet, "education is a statewide concern and . . . the Legislature is vested by the Constitution with the ultimate control over school matters." (*Patton v. Governing Board* (1978) 77 Cal.App.3d 495, 501 [143 Cal.Rptr. 593].) Here the Legislature has promulgated a system that it believes is the best way to deal with truancy. Monrovia, and other cities, however well-intentioned, should not, without appropriate legislative blessing, be able to impose methods inconsistent with those of the state to handle truants.

Appellants' petition for review by the Supreme Court was denied March 19, 2003.