Filed 4/18/14  In re T.R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re T.R., a Person Coming Under the Juvenile Court Law. | |
| | D064345 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J233162) |
| v. | |
| T.R., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Richard R. Monroy, Browder Willis and Carlos O. Armour, Judges.  Affirmed in part and reversed in part.


Anna M. Jauregui-Law, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise Jacobson and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

An amended delinquency petition (Welf. & Inst. Code, § 602) alleged T.R. possessed not more than 28.5 grams of marijuana (Health & Saf. Code, § 11357, subd. (b); count 5) on May 8, an infraction, and committed four offenses on March 28, 2013: one felony, possessing marijuana for sale (Health & Saf. Code, § 11359; count 1); and three infractions, possessing not more than 28.5 grams of marijuana (Health & Saf. Code, § 11357, subd. (b); count 2), being a minor in possession of a cigarette lighter (Pen. Code, § 308, subd. (b); count 3) and daytime loitering while school was in session (San Diego Mun. Code, § 58.05, subd. (b)(1); count 4). Following denial of T.R.'s motion to suppress evidence (Welf. & Inst. Code, § 700.1), he entered an admission to count 5. The juvenile court dismissed count 2 (Pen. Code, § 654) and sustained the petition as to counts 1, 3 and 4. The court adjudged T.R. a ward and placed him on probation. T.R. appeals. He contends the court erred in denying his suppression motion and the Education Code preempts the San Diego Municipal Code daytime loitering provision. As an alternative to those two contentions, T.R. contends he received ineffective assistance of counsel. Finally, T.R. contends the true finding of loitering is unsupported by substantial evidence.[1] We agree with the first contention.

---

[1] T.R. makes no contention regarding count 5.

2

BACKGROUND

*Evidence at the Suppression Hearing*

At approximately 11:30 a.m. on Thursday, March 28, 2013, San Diego Police Detective Bradford Pajita and San Diego Police Officer Crystal Duerr were participating in Operation Safe Passage. Operation Safe Passage was designed to target criminal activity along the Park Boulevard corridor leading from San Diego High School to Imperial Avenue and to allow safe passage of students, children, parents and other citizens who walked in the area.

Pajita saw two males about one or two blocks from San Diego High School, walking toward him, from the area of the school and a McDonald's restaurant toward a motel. School was in session, and based on the males' youthful appearance, Pajita believed they were in violation of daytime loitering laws. Pajita and Duerr stopped the two males, who were T.R. and his 18-year-old brother. Pajita asked T.R. how old he was. T.R. said he was 17 years old. He also said he was on spring break. Pajita knew that spring break did not start until April 1.[2] Pajita asked T.R. to remove the backpack that was on his back. Because T.R. was 17 years old and in violation of the daytime loitering laws, Pajita handcuffed and arrested him. Pajita recognized T.R., having seen him one day earlier during the surveillance of a suspect in a separate case.

Pajita conducted a pat down of T.R. Pajita then searched T.R.'s pockets and found a lighter and a cell phone in his right front pants pocket and a second cell phone in his left

_____

[2]      T.R. asserts spring break commenced on March 29, 2013, but does not request judicial notice.

3

front pocket. T.R. identified the phone that had been in his right pocket as his and the one that had been in his left pocket as his brother's. After searching T.R.'s person, Pajita searched his backpack. In the front compartment, Pajita found an empty green prescription bottle that smelled of marijuana. Pajita also found five plastic baggies containing loose marijuana and two digital scales. In the back compartment of the backpack, Pajita found a container holding 1.7 grams of marijuana and a glass container holding approximately 10.4 grams of marijuana. Based on the items he had found, Pajita believed T.R. possessed the marijuana for sale. Pajita searched the messages on the phone T.R. had identified as his. There were "[m]essages . . . to a person by the name of K Dog wanting a half zip of marijuana for approximately 85 to 90 dollars." Pajita added possession of a lighter and possession of marijuana for sale to his reasons for arresting T.R.

### *The Court's Ruling*

The court found Pajita credible. The court determined that T.R.'s youthful appearance gave rise to a reasonable suspicion that he was violating the daytime loitering law and justified a detention for further investigation. Probable cause to arrest T.R. for daytime loitering arose from his admission that he was a minor, his claim that he was on spring break and Pajita's knowledge that spring break had not started. T.R.'s counsel's argument that T.R. might have had permission to be where he was did not negate the probable cause. Citing *In re Humberto O*. (2000) 80 Cal.App.4th 237 (*Humberto O.*), the court noted that Education Code section 48264 allows a police officer to arrest a student who is truant. Additionally, Welfare and Institutions Code section 625 allows a police

4

officer to take into temporary custody a minor believed to be a person described in Welfare and Institutions Code section 601 or 602.  Thus, Pajita was permitted to conduct a search for his own safety before placing T.R. in the patrol car.  During that search, Pajita discovered evidence that led him to believe T.R. possessed marijuana for sale.  The court denied the suppression motion.

## DISCUSSION

### *The Suppression Motion*

T.R. contends the arrest and search of his person and backpack violated the Fourth Amendment for several reasons.  First, his arrest for truancy, under the loitering ordinance, was not a valid custodial arrest.  Second, the search exceeded the scope of an otherwise permissible pat down before transportation to police headquarters.  Third, the court improperly relied on Welfare and Institutions Code section 625, subdivision (a) and related sections in concluding the arrest and search were justified.  Fourth, in any case, there was no probable cause to arrest.

In reviewing the denial of a suppression motion, we consider the evidence in a light favorable to the juvenile court's ruling.  (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.)  " '[W]e defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found.  [Citations.]'  [Citation.]" (*People v. Lomax* (2010) 49 Cal.4th 530, 563, accord *In re Lennies H.,* at p. 1236.)  We accept the juvenile court's finding that Pajita was credible.  (*People v. Woods* (1999) 21 Cal.4th 668, 673.)

In *Humberto O*., police officers saw Humberto walking down the street during school hours. (*Humberto O., supra,* 80 Cal.App.4th at p. 240.) They stopped him, suspecting he was a truant based on his youthful appearance, the backpack he was wearing and his proximity to a school. (*Id*. at pp. 240, 244.) Humberto admitted he attended the school. (*Id*. at p. 240.) The officers told Humberto they would cite him for truancy and transport him to school and asked him for school identification. (*Ibid*.) Humberto produced a bus pass bearing someone else's name and photograph. (*Ibid*.) According to police procedure, the officers planned to handcuff Humberto, place him in the patrol car and transport him to school. (*Ibid*.) First, they conducted a pat down search of his person and found a dagger in his backpack. (*Ibid*.) Humberto moved to suppress the dagger, arguing, inter alia, that he was not arrested or detained at the time of the search. (*Ibid*.) The court granted the motion and the People appealed. (*Ibid*.) The reviewing court reversed, holding the officers had probable cause to arrest Humberto under Education Code section 48264 for being a truant and the search was valid as incident to that arrest. (*Humberto O*., at pp. 241-244.) The court stated: "The circumscribed nature of an arrest under [Education Code] section 48264 . . . does not preclude a search of the minor's body and of the area in the minor's control. [Citation.] That is, although the purpose of [an Education Code] section 48264 arrest was to return defendant to school, the officers had the right to search the backpack. '[T]he "lawfulness of the search turns not on whether the officer intended to release the defendant after taking him into custody, but on whether the officer was justified in arresting the defendant and taking him into custody in the first place." [Citation.]' " (*Id*. at p. 243.)

6

Education Code section 48264 states: "The attendance supervisor or his or her designee, a peace officer, a school administrator or his or her designee, or a probation officer may arrest or assume temporary custody, during school hours, of any minor subject to compulsory full-time education or to compulsory continuation education found away from his or her home and who is absent from school without valid excuse within the county, city, or city and county, or school district." San Diego Municipal Code section 58.05, the provision at issue here, states: "It is unlawful for any juvenile who is subject to compulsory education to loiter, idle, wander, or be in or upon the public streets, highways, roads, alleys, parks, playgrounds, or other public grounds, public places, public buildings, or the premises of any establishment, vacant lots or any unsupervised place between the hours of 8:30 a.m. and 1:30 p.m. on any day when school is in session for that juvenile." (*Id*., subd. (b)(1).) "Upon any violation of Section 58.05[, subdivision] (b)(1) . . . , a peace officer may issue a citation to the juvenile and may transport the juvenile home or to the school from which the juvenile is absent. If cited, the juvenile and a parent shall appear in court as directed in the citation. . . ." (*Id*., subd. (d)(1).) "(1) Any person convicted of an infraction for violation of San Diego Municipal Code section 58.05[, subdivision] (b)(1) . . . may be punished by a fine not exceeding two hundred fifty dollars ($250.00) or by a requirement to perform city, county or school–approved projects or community service, or both. . . ." (*Id*., subd. (e).) "It is a defense to prosecution under Section 58.05[] (1) [w]hen the juvenile is accompanied by his or her parent or other adult having the care or custody of the juvenile." (*Id*., subd. (c)(1).)

7

Generally, "a search or seizure which is reasonable based on the objective facts is not rendered unreasonable merely because the officer held an improper subjective motivation at the time of the search" (*People v. Uribe* (1993) 12 Cal.App.4th 1432, 1436) or because of "the officer's subjective hope the stop might yield evidence of other crimes" (*id*. at p. 1438). A truancy arrest, however, is not " 'a typical criminal arrest. The emphasis is not on punishment but on correction of truancy, i.e., to promote attendance in order that students may be educated.' (*In re James D.* [1987] 43 Cal.3d [903,] 910.)" (*Humberto O., supra,* 80 Cal.App.4th at p. 242.) "When the police take a minor into custody under [Education Code] sections 48264 and 48265 to deliver the minor to school, the result is a section 48264 'arrest.' (See *In re James D., supra,* 43 Cal.3d at pp. 915-916.)" (*Humberto O.,* at p. 242.) " '[T]he sole purpose of a truancy "arrest" is to return the absent student to school as expeditiously as possible.' [Citation.] 'Truants are not, except in aggravated circumstances involving "habitual" offenders, subject to the jurisdiction of the juvenile courts. [Citations.]' [Citation.] Therefore, the 'arrest' under section 48264 ' "is a severely limited type of arrest and may not be used as a pretext for investigating criminal matters." [Citations.]' (*In re James D., supra,* at p. 915, quoting *In re Miguel G.* [1980] 111 Cal.App.3d [345,] 349.)" (*Humberto O.,* at p. 242.)

Unlike Education Code section 48264, San Diego Municipal Code section 58.05, subdivision (b)(1) does not provide for any arrest, whether truancy or criminal. Unlike the situation in *Humberto O., supra*, 80 Cal.App.4th at page 244 there is no evidence Pajita planned to transport T.R. to school. Rather, it is apparent the arrest was " ' "a pretext for investigating criminal matters," '" specifically, T.R.'s possible involvement in

8

illegal drug activity.  (*Id.* at p. 242.)  Because there was no valid truancy "arrest" and no probable cause to arrest for a criminal offense, the pat down and search were invalid, and the juvenile court erred by denying the suppression motion.  We need not discuss whether the pat down and search would have been justified, for reasons of officer safety, had Pajita cited T.R. for a violation of San Diego Municipal Code section 58.05, subdivision (b)(1) and transported him to his home (*id.*, subd. (d)(1)).

Welfare and Institutions Code sections 625, subdivision (a), 601 and 602 are inapplicable here and do not justify the arrest and search.  Welfare and Institutions Code section 625, subdivision (a) allows a police officer to take a minor into temporary custody when there is reasonable cause to believe that the minor is a person described in Welfare and Institutions Code section 601 or 602.  Welfare and Institutions Code section 601 applies to minors who are beyond parental control, who violate age-based curfew ordinances (*id.*, subd. (a)) or who are habitual truants (*id.*, subd. (b)).  Welfare and Institutions Code section 602 provides for juvenile court jurisdiction over a minor who violates certain laws, other than those setting an age-based curfew.

We reverse the order denying T.R.'s suppression motion.

*Preemption*

T.R. contends San Diego Municipal Code section 58.05 duplicates and contradicts the truancy law set forth in Education Code section 48264, which fully occupies the field and therefore preempts San Diego Municipal Code section 58.05.  T.R. concludes that

because a violation of Education Code section 48264 is not a crime and an arrest under that section is noncustodial, the search incident to his arrest was unlawful.[3]

"Article XI, section 7 of the California Constitution provides that a 'city may make and enforce within its limits all local, police, sanitary and other ordinances and regulations *not in conflict* with general laws.'  (Italics added.)"  (*Dailey v. City of San Diego* (2013) 223 Cal.App.4th 237, 254.)  "Under article XI, section 5, subdivision (a) of the California Constitution, a charter city . . . 'gain[s] exemption, *with respect to its municipal affairs*, from the "conflict with general laws" restrictions of' article XI, section 7.  [Citation.]"  (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897, fn. 1.)  "[C]harter cities . . . may adopt and enforce ordinances that conflict with general state laws, provided the subject of the regulation is a 'municipal affair' rather than one of 'statewide concern.'  [Citations.]"  (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1251.)  San Diego is a charter city.  (*Dailey,* at p. 254.)

There is a strong presumption against preemption.  (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1099.)  The party who asserts preemption bears the burden of demonstrating preemption.  (*Id.* at p. 1088.)  In determining whether Education Code section 48264 preempts San Diego Municipal Code section 58.05, "we must interpret both pieces of legislation.  '[T]he construction of statutes and the ascertainment of

---

3    Respondent argues T.R. has forfeited the right to raise the contention because he did not do so in the juvenile court.  This is incorrect.  "[A] party may raise a constitutional issue, like preemption, for the first time on appeal."  (*ReadyLink HealthCare, Inc. v. Jones* (2012) 210 Cal.App.4th 1166, 1175.)

10

legislative intent are purely questions of law.' " (*Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 392.)

*Harrahill v. City of Monrovia* (2002) 104 Cal.App.4th 761 concerned a city ordinance largely identical to San Diego Municipal Code section 58.05, subdivision (b)(1) (*Harrahill,* at p. 763, fn. 1) and providing for citations, as does San Diego Municipal Code section 58.05, subdivision (d)(1) (*Harrahill,* at p. 766). In *Harrahill,* "the [o]rdinance, on its face [did] not seek to compel school attendance or to enforce truancy provisions" (*id*. at p. 766) and "violators [were] issued citations and left on the streets," not "returned to school" (*id*. at p. 765). The reviewing court concluded the ordinance was a valid exercise of police power "to prohibit the presence of unsupervised minors in public places during normal school hours[.]" (*Id*. at p. 766.) Indeed, the reviewing court characterized the ordinance as "a classic exercise of a city's police power." (*Ibid*.)

The ordinance at issue here is also "a classic exercise of a city's police power." (*Harrahill v. City of Monrovia, supra,* 104 Cal.App.4th at p. 766.) San Diego Municipal Code section 58.05 provides for the transportation of violators to their homes as well as to school and is a valid exercise of police power "to prohibit the presence of unsupervised minors in public places during normal school hours" rather than a measure "to compel school attendance or to enforce truancy provisions." (*Harrahill*, at p. 766.) Furthermore, unlike Monrovia (see *Harrahill,* at p. 764), San Diego is a charter city and therefore "may adopt and enforce ordinances that conflict with general state laws, provided the subject of

11

the regulation is a 'municipal affair' rather than one of 'statewide concern.' " (*American Financial Services Assn. v. City of Oakland, supra,* 34 Cal.4th at p. 1251.)

Education Code section 48264 does not preempt San Diego Municipal Code section 58.05.

*Effective Assistance of Counsel*

T.R. contends trial counsel was ineffective because she did not raise the contentions discussed above. In light of our conclusion that the court erred by denying the suppression motion and that, as a matter of law, there was no preemption, we need not address this contention.

*Loitering*

T.R. contends the true finding of loitering is unsupported by substantial evidence of act and intent. As to the act, he asserts that the common sense meaning of "to loiter, idle, wander, or be" (San Diego Mun. Code, § 58.05, subd. (b)(1)) is "standing idly about, being inactive, lingering or roaming aimlessly, proceeding slowly, delaying or dawdling, moving lazily and without purpose, or moving about without any destination or purpose" and " 'being[]' . . . is hardly anything but existence--it does not describe any activity at all; it could be merely inactivity like idleness." As to the intent, T.R. asserts a violation of San Diego Municipal Code section 58.05 requires having "the purpose of committing a crime."

The acts described in San Diego Municipal Code section 58.05, subdivision (b)(1) include being in one of the specified places, between certain hours, "on any day when school is in session for that juvenile." (*Id.*, subd. (b)(1).) This was clearly the case here,

12

and in his reply brief, T.R. concedes "the act of '[be[ing]' as a component of loitering was satisfied . . . ."  Nor can T.R. prevail on his argument regarding intent.  San Diego Municipal Code section 58.05 describes an infraction.  (*Id*., subds. (d)(1) & (e).)  An infraction is not a crime (*People v. Sava* (1987) 190 Cal.App.3d 935, 939) and does not require criminal intent (*Delfino v. Sloan* (1993) 20 Cal.App.4th 1429, 1437-1438; *In re Gavin T.* (1998) 66 Cal.App.4th 238, 242).

Substantial evidence supports the true finding of loitering.

DISPOSITION

The order denying the suppression motion and the true findings on counts 1, 3 and 4 of the petition are reversed.  In all other respects, the judgment is affirmed.

NARES, Acting P. J.

WE CONCUR:

McDONALD, J.

McINTYRE, J.

13