*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HOLIFIELD, LAWRENCE, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Thomas A. PAGE III**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202000069**

Decided: 11 February 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Stephen F. Keane

Sentence adjudged 9 January 2020 by a general court-martial convened at Marine Corps Air Station Yuma, Arizona, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, forfeiture of all pay, confinement for six months, and a bad-conduct discharge.

For Appellant:
*Major Brian L. Farrell, USMCR*

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

_____

*11 February 2020:*

*Administrative correction to indicate author and concurring judges.*

Senior Judge HOLIFIELD delivered the opinion of the Court, in which Judges LAWRENCE and DEERWESTER joined.

---

**PUBLISHED OPINION OF THE COURT**

---

HOLIFIELD, Senior Judge:

Appellant was convicted, pursuant to his pleas, of one specification of wrongful broadcast of intimate visual images and one specification of abusive sexual contact in violation of Articles 117a and 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 917a, 920.[1] In two assignments of error [AOEs], Appellant avers that his guilty plea to wrongfully broadcasting intimate images was improvident in that (1) information independent of the broadcasting of a photo does not satisfy the element that the victim be identifiable from "information displayed in connection with the intimate visual image"; and (2) the term "broadcasting" does not include text messaging a photo to one's own phone. We find merit in the first AOE and take action in our decretal paragraph that moots the second.

## I. BACKGROUND

From March to May 2018, Appellant and Corporal Charlie[2] served together in Okinawa, Japan, and became friends. While participating in an exercise in South Korea in May 2018, they shared a twelve-man tent. One night, while Corporal Charlie slept, Appellant took the sleeping man's unlocked phone and found on it multiple nude images within a text discussion between Corporal Charlie and Corporal Charlie's wife. Appellant texted to himself from Corporal Charlie's phone one image of what he believed to be his friend's genitalia. Appellant deleted the image within days and did not forward it to anyone.

---

[1] Three specifications of sexual assault were withdrawn and dismissed pursuant to a plea agreement. A second specification of abusive sexual contact was dismissed by the military judge as an unreasonable multiplication of charges. R. at 75.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

Additional facts necessary to resolve the AOEs are addressed below.

## II. DISCUSSION

### A. Standard of Review

"We review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). In challenging the acceptance of a guilty plea, an appellant must show that the military judge abused his discretion in accepting the plea despite "a substantial basis in law or fact to question the plea." *United States v. Phillips*, 74 M.J. 20, 22 (C.A.A.F. 2015). "[A]ny ruling based on an erroneous view of the law . . . constitutes an abuse of discretion." *Inabinette* at 322. And "a court shall not accept a plea of guilty where 'an accused . . . sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently . . . .'" *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F. 2004) (alteration in original) (quoting UCMJ art. 45(a)).

### B. Whether there is a Substantial Basis in Law or Fact to Question the Providence of Appellant's Guilty Plea

During the court's *Care*[3] inquiry, the military judge properly advised Appellant of the elements[4] of the offense charged under Article 117a:

> One, that between on or about 1 March 2018 and 31 May 2018, at or near South Korea, you . . . knowingly and wrongfully broadcast intimate visual images of Corporal [Charlie], United States Marine Corps;
>
> Two, that Corporal [Charlie] was at least 18 years of age when the visual images were created;
>
> Three, that Corporal [Charlie] is identifiable from the visual images or from information displayed in connection with the visual images;

---

[3] *See United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

[4] *See* Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-42A-1 (Feb. 29, 2020) [Benchbook]. For consistency's sake, we will refer to these elements by the numbers used by the military judge.

Four, that Corporal [Charlie] did not explicitly consent to the broadcast of the visual images;

Five, that you knew, or reasonably should have known, that the visual images were made under circumstances [in] which Corporal [Charlie] retained a reasonable expectation of privacy regarding a broadcast of the visual images;

Six, that you knew or reasonably should have known that the broadcast of the visual images were [sic] likely to cause harassment and emotional distress for Corporal [Charlie] and to harm substantially Corporal [Charlie's] reputation and personal relationships;

And, seven, that under the circumstances, your conduct had a reasonably direct and palpable connection to a military mission or military environment.[5]

The military judge also correctly explained to Appellant the definitions applicable to Article 117a. Notably, the Benchbook does not define or explain "information displayed in connection with the intimate visual image."

During the colloquy, Appellant's responses substantively tracked with the statements contained in the stipulation of fact, in which he admitted, without explanation or detail, that each of these elements was met.[6] Regarding the third element, the stipulation of fact reads simply as follows: "Cpl [Charlie] is identifiable from the visual images and from information displayed in connection with the visual images."[7] When the military judge sought to build a factual basis to support this conclusory statement, the following discussion occurred:

MJ: What was contained in the pictures?

ACC: There were nude photographs. sir.

MJ: Nude photographs of him and nude photographs of her?

ACC: Yes, sir.

---

[5] R. at 26-27.

[6] Pros. Ex. 1 at 2-3.

[7] Pros. Ex. 1 at 3.

> MJ: Okay. And then what did you do?
>
> ACC: I saw the photograph of him, and I sent it to myself, sir.
>
> MJ: Describe—how many photographs did you send to yourself?
>
> ACC: Just one, sir.
>
> MJ: Describe the photograph you sent to yourself.
>
> ACC: It was a picture of his genitals.
>
> MJ: Was he in the picture as well?
>
> ACC: No, sir.
>
> MJ: It was just a picture of genitals?
>
> ACC: Yes, sir.
>
> MJ: You couldn't tell who it was?
>
> ACC: No sir. But after the incident I came up—confessed to him. He made it clear that it was him.[8]

At this point, the military judge rightly recognized that there was a potential inconsistency between the stipulation of fact, Appellant's statements, and his pleas regarding whether the person in the picture was identifiable either from the image itself or from information displayed in connection with it. So he asked the trial counsel what his theory was on the issue. The trial counsel responded that the fact the image was part of a text conversation between the victim and his wife in which the couple was exchanging nude photos was "information in connection with the message" that would lead Appellant to believe it was Corporal Charlie's genitalia in the picture.[9] The military judge returned to questioning Appellant:

> MJ: Okay. So it is just a photograph of Corporal [Charlie's] penis and genitalia?
>
> ACC: Yes, sir.
>
> MJ: But there was no picture of him?

---

[8] R. at 33-34.

[9] *Id.*

ACC: No, sir.

 MJ: But it was taken from his phone?

ACC: Yes, sir.

 MJ: And it was sent to his wife?

ACC: Yes, sir.

 MJ: And then you actually discussed it with him later?

ACC: Yes, sir.

 MJ: And he confirmed that that was a picture of his penis?

ACC: I knew it was his—a picture of—by the way he reacted to it and that—the fact that it was between him and his wife.[10]

Without indicating how he interpreted the relevant language in Article 117a, the military judge moved on to question Appellant about other elements of the offense.

*1. Statutory Analysis*

"Statutory construction begins with a look at the plain language of a rule." *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007). In doing so, "sections of a statute should be construed in connection with one another as 'a harmonious whole' manifesting 'one general purpose and intent.'" *United States v. Quick*, 74 M.J. 517, 520 (N-M Ct. Crim. App. 2014) (quoting Norman J. Singer, *Statutes and Statutory Construction* § 46:05 (6th ed. 2014)). The canon against surplusage requires that, "if possible, every word and every provision is to be given effect and that no word should be ignored or needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." *United States v. Sager*, 76 M.J. 158, 161 (C.A.A.F. 2017). Accordingly, in interpreting provisions of the UCMJ, we "should . . . give meaning to each word of the statute." *Id.* (alteration in original) (internal quotation marks and citation omitted). "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Id.* (alteration in original) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)).

---

[10] R. at 34-35.

First, reading the UCMJ as a cohesive whole, we assume Congress does not create new articles that achieve the same end or prohibit the same conduct as do existing articles. Article 117a ("Wrongful broadcast or distribution of intimate visual images") criminalizes conduct different from the only slightly older Article 120c(a) ("Indecent viewing, visual recording, or broadcasting").[11] While paragraph (a)(3) of Article 120c refers to broadcast or distribution, it is only in regard to images *created without consent*. From its plain language, Article 117a differs in that its focus is on the harm (physical, emotional, financial, professional) that the *nonconsensual broadcast or distribution* of an intimate image may cause a victim. It does not proscribe the viewing of said image, and consent regarding the creation of the image is irrelevant. Rather, the gravamen of Article 117a is transmitting the image in a way that allows others to identify the person in the picture, either from information contained in the image itself or displayed in connection with the image as broadcast.

Second, the sixth element, that the broadcaster or distributor of the image "knows / should have known" that the distribution will cause such harm to a victim, implicitly assumes the sender knows who is in the picture—how else would the sender know whether sending the intimate image will cause the victim harm? The same is true for the fourth and fifth elements; knowledge of whether a victim consents to the broadcast or retains a reasonable expectation of privacy regarding any broadcast requires that the broadcaster know who is in the picture. If the sender's ability to identify the victim (implicit in the fourth, fifth, and sixth elements) is alone sufficient to meet element 3, element 3 becomes surplusage—as it is a given that the sender knows who is in the image before sending it.

Similarly, allowing the third element to be satisfied here solely by information known by the sender before—and independent of—the actual broadcast or distribution of the image would render the sixth element a factual impossibility. If the victim cannot be identified in connection with the image *as broadcast or distributed*, the broadcast *ipso facto* is not "likely to cause harm" to the victim.

---

[11] Article 117a was enacted by the National Defense Authorization Act [NDAA] for Fiscal Year 2018, Pub. L. No. 115-91, § 553(a), 131 Stat. 1283 (2017); Article 120c was enacted by the NDAA for Fiscal Year 2012, Pub. L. No. 112-81, § 541(c), 125 Stat. 1298 (2011).

Accordingly, we find that "information displayed in connection with the intimate image" is limited to information that accompanies the picture when it is broadcast or distributed and is displayed after the broadcast or distribution occurs. We now examine whether the facts as developed below support a conviction in light of this limited definition.

*2. Factual Analysis*

Appellant avers in part that the military judge applied an overly expansive definition of "identifiable . . . from information displayed in connection with the intimate visual image." While the military judge recognized a potential issue regarding the third element, he did not rule on the issue or make any comments indicating what definition he applied. But, even assuming he applied the correct definition, the military judge abused his discretion in accepting the plea despite a substantial basis in fact to question the plea.

"If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting UCMJ art. 45(a)) (citing Rule for Courts-Martial 910(h)(2)). In this case, the military judge did neither, despite the fact that Appellant's and trial counsel's responses, rather than resolve the inconsistency, actually underscored it.

It is clear from both Appellant's responses and trial counsel's stated theory of criminality that the only evidence identifying the genitalia in the image as belonging to Corporal Charlie is: (1) Appellant found the picture on Corporal Charlie's phone; (2) Appellant saw that the image was originally part of a text discussion between Corporal Charlie and his wife; and (3) Corporal Charlie later stated to Appellant that it was his genitalia in the image and reacted angrily when informed that Appellant had sent the picture to himself. There is nothing in the visual image itself that identifies Corporal Charlie; Appellant specifically stated that he couldn't tell who it was in the photo. Had the text message in which the photograph was embedded, along with its associated words, names, etc., accompanied the image as broadcast, there may have been sufficient context to specifically identify the genitalia as that of Corporal Charlie. However, Appellant sent only the image of *a* male's genitalia from one phone to his own. Likewise, there is no evidence in the record indicating that there was *on Appellant's phone* information displayed

in connection with the visual image that identified the genitalia as Corporal Charlie's.[12] Thus, any third party viewing the image on Appellant's phone, post-broadcast, would be unable to identify whose genitalia are in the picture.

The Government concedes, and we agree, that the conversation Appellant had with Corporal Charlie after forwarding the image is not information displayed in connection with the intimate image.[13] Instead, it claims that the displayed information was "the text message conversation in which it was found, which identified the Victim as the sender and his wife as the recipient."[14] The issue, then, is whether this sole piece of evidence, independent of the broadcast, tying the image to Corporal Charlie is sufficient to meet Article 117a's third element.

Applying the definition explained above, we find it is not. Information known to the broadcaster but not accompanying the image as broadcast is not "information displayed in connection with the intimate visual image." The facts here simply do not match the elements of Article 117a. Thus, at trial, there was a substantial basis in fact to question Appellant's plea—and that question remains. Accordingly, we will set aside the findings of guilty as to Charge I and its Specification.

## C. Sentence Reassessment

We must next determine whether our "broad discretion" allows us to reassess Appellant's sentence instead of ordering a rehearing on sentence. *United States v. Wincklemann*, 73 M.J. 11, 12 (C.A.A.F. 2013). In *Wincklemann*, our superior court provided four "illustrative, but not dispositive," factors to consider. The factors are:

---

[12] The Government invites us to infer that, "because a text message conversation identifies the sender," there was information displayed on Appellant's phone that identifies the image as having come from Corporal Charlie's phone, and that this information would allow a third party viewer to identify the genitalia in the image as belonging to Corporal Charlie. Gov't Br. at 9. We decline to assume away an element where there is nothing in the record to support this two-step inference. The record contained no screen shots of the image on Appellant's phone, nor was there any discussion on the record describing how the image appeared once on Appellant's phone.

[13] *Id.* at 10.

[14] *Id.*

(1) [Whether there are] [d]ramatic changes in the penalty landscape and exposure.

(2) Whether an appellant chose sentencing by members or a military judge alone. . . .

(3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses. [and]

(4) Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial.

*Id.* at 15-16 (citations omitted).

While the potential confinement for violating Article 117a was, at seven years, half the maximum confinement Appellant faced for the two offenses for which he was sentenced, Appellant's actual total exposure under the plea agreement was six months. The military judge awarded the minimum confinement allowed by the plea agreement: six months for each offense, to be served concurrently. Accordingly, we do not find there to be a dramatic change in Appellant's punitive exposure.

Of the two offenses, the Article 120 was by far the more serious. Appellant pleaded guilty to fellating a fellow Marine while the latter was incapable of consenting due to impairment by alcohol. The aggravating circumstances—to include victimizing and abusing the trust and friendship of a fellow Marine who is asleep or unconscious—apply to both offenses. And this Court has experience and is familiar with the range of sentences awarded for such violations of Article 120. Based on the evidence in the record, we are confident that, for the Article 120 offense alone, Appellant would have received a sentence no less than that awarded by the military judge and reflected in the Entry of Judgment.

Additionally, Rule for Court-Martial 1007 now requires that, except when sentencing is done by members, the military judge shall specify the term of confinement, if any, awarded for each offense, and whether the terms of confinement shall run consecutively or concurrently. As the military judge sentenced Appellant under the new rule, we know  with certainty what sentence he would have imposed at trial for the remaining offense. And we find that sentence appropriate.

### III. CONCLUSION

The finding of guilty to Article 117a is **SET ASIDE** and **DISMISSED WITH PREJUDICE**. After careful consideration of the record and briefs of the appellate counsel, we have determined that, following our corrective action, the remaining approved finding and the sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights remains. UCMJ arts 59, 66. Accordingly, the remaining finding and sentence in the Entry of Judgment are **AFFIRMED**.

Judges LAWRENCE and DEERWESTER concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court